OPINION
This is an appeal from the Willoughby Municipal Court. Third party defendant-appellant, Progressive Specialty Insurance Company, Inc. ("appellant"), appeals the verdict in favor of third party plaintiff-appellee, Dean R. Paglio ("appellee"), and the entry overruling its motion for judgment notwithstanding the verdict and/or a new trial.
This matter arose on July 9, 1996, from an automobile accident where appellee rear-ended a vehicle operated by Aimee Levin ("Levin"), who was insured by Westfield Insurance Company ("Westfield"). Appellant provided appellee an automobile liability insurance policy, but denied him coverage for that collision. Westfield furnished certain benefits to Levin and on June 18, 1997, after reaching a settlement regarding those claims, filed a subrogation action in the Willoughby Municipal Court against appellee for $12,038.66.[1] On October 30, 1997, appellee filed an answer and third party complaint against appellant. Appellant answered appellee's complaint and filed a counterclaim for declaratory judgment.[2] On January 30, 1998, appellee submitted a reply to appellant's counterclaim. On June 30, 1998, appellant moved for summary judgment. In an entry dated July 29, 1998, the trial court overruled appellant's motion for summary judgment.
On September 18, 1998, appellant and appellee submitted their proposed jury instructions and trial briefs. On December 4, 1998, a jury trial took place.
The evidence at trial revealed that appellee initially applied for insurance with appellant in 1993 on his 1984 Buick. On July 23, 1993, a 1988 Ford Tempo ("Tempo") was added to the policy. In 1996, appellee was in the process of selling the Tempo, which eventually sold in August 1996. He stated that since the Tempo was parked with a "For Sale" sign from March 11, 1996, until July 9, 1996, it was his intention that the Tempo remain on the policy until March 11, 1996, when a 1988 Volkswagen GTI ("Volkswagen ") replaced it. On July 9, 1996, the day of the accident, appellee was using the Tempo because the Volkswagen was not working.
At the trial, appellee related that around 10:30 p.m., on July 8, 1996, while he was on his way home, his Volkswagen began sputtering and he noticed smoke coming from the hood, so he drove the car home. On July 9, 1996, appellee went outside after he got ready for work and tried to start the Volkswagen, but was unsuccessful. He noticed that it was leaking gas and oil. He believed that the Volkswagen was inoperable.[3] Hence, since the Volkswagen was not running, he decided to take his Tempo to work and on his way there, he was involved in a collision with Levin.
Appellee explained that although the Tempo was not listed on the declarations page of his insurance policy, he believed it was covered. It was not until he spoke to his employer that he realized appellant might deny the claim. Therefore, the morning of the accident, appellee called appellant's underwriting department for the purpose of changing his coverage. He deleted the Volkswagen from the policy and added the Tempo as a "replacement car." Appellee requested that the alteration be backdated to July 8, 1996. Appellee explained that his Volkswagen had broken down the evening before the accident. During that telephone call, appellee did not report the accident. However, he claimed that he later telephoned appellant to report the collision. A new declarations page was issued consistent with appellee's request and dated July 8, 1996.
The Volkswagen was eventually towed from appellee's driveway in August 1996, and underwent $1,446.90 in repairs.[4] It needed "[o]ne fuel filter, one gasket head, [replacement of a] broken cylinder, head bolt, [and] * * * head gasket, [installation of a] fuel pump and housing, [replacement of] piston rings and rod bearings." Appellee testified that his policy that listed the Volkswagen on the declarations page commenced on May 1, 1996, and continued through May 1, 1997. After the Volkswagen was repaired, on August 9, 1996, it was added back to the policy.
Appellant denied indemnification and a defense to appellee for any injuries and/or damages arising from the motor vehicle collision claiming that even though appellant insured appellee, the Tempo was not listed on his policy on the date of the accident.
At the close of appellee's case-in-chief, appellant moved for a directed verdict on the underlying claim that appellant should provide a defense and/or indemnity to the lawsuit filed by Westfield and Levin against appellee. Appellant also moved for a directed verdict on the bad faith allegation. The trial court granted appellant's motion as to the bad faith allegation, but overruled it with respect to language in the contract.
Appellant proceeded with its case and called Melanie Began ("Began") as its first witness. Began testified that she was employed as a claims adjuster with appellant in July 1996. She stated that she was assigned to the claim involving appellee on July 10, 1996, after Levin reported it. Began recalled that there was an endorsement in appellee's file mentioning that the insured called customer service on July 9, 1996, at 8:50 a.m., and "took the Volkswagen off and added the [Tempo] to be effective 7/8/96." She added that if there is a change to a policy around the time of an accident, she looks into it to make sure coverage is in order. The notes in appellee's file also discussed a telephone call made to appellee's mother to discuss the matter with appellee. Began was instructed to obtain a recorded statement from appellee. After she was unable to reach appellee by telephone and his beeper, she sent a reservation of rights letter and two contact cards to him. She was unsuccessful in receiving a response from appellee. Thereafter, because the Tempo did not meet the coverage requirements and did not satisfy the definition of replacement car as defined by appellee's policy, the claim was denied and a letter to that effect was sent to appellee. When Began was told to give an example of a mechanical breakdown that would render a car permanently inoperable, she stated an auto that had been crushed by a train or had encountered flood damage.
Following Began's testimony, Fred Kreiner ("Kreiner") was called to testify and he related that he had been employed with appellant in numerous capacities since 1985. After he became an attorney in 1996, he continued his employment with appellant. Kreiner gave examples of automobiles that may be considered permanently inoperable, which included cars that are crushed, burned, rusted, involved in severe collisions, or have had the firewall replaced. Yet, he was unable to offer any insight as to what he characterized as a mechanical breakdown that would render a car permanently inoperable.
Prior to closing arguments, appellant's attorney objected to the jury instructions. Specifically, he claimed that the charge, which directs the jury to give words in contracts their plain and ordinary meaning according to common usage in daily life, was not included in the jury instructions. Furthermore, appellant's attorney argued that the jury should be instructed to disregard the instruction pertaining to sympathy. The jury returned a verdict in favor of appellee on December 4, 1998. In a judgment entry dated December 15, 1998, the trial court ordered appellant to satisfy the $12,038.68 verdict. Thereafter, on December 18, 1998, appellant filed a motion for judgment notwithstanding the verdict and/or a new trial, which the court overruled on January 11, 1999. Appellant timely filed the instant appeal and now asserts the following as error:
 "I. The Trial Court erred by denying [a]ppellant's Motion for Summary Judgment.
 "II. There being no questions of fact, the Trial Court [sic] by not ruling that the pertinent policy language was clear and unambiguous and that the policy of insurance did not afford coverage to [a]ppellee for the July 9, 1996 accident.
 "III. The Trial Court erred to the prejudice of [appellant] by not granting the Motion for Directed Verdict at the conclusion of [a]ppellee's case.
 "IV. The Court erred by not providing to the jury Ohio Jury Instruction 253.04 directing the jury to give words in a contract their plain and ordinary meaning according to our common usage in daily life.
 "V. The Trial Court erred by not instructing the jury to disregard sympathy in its charge.
 "VI. The Trial Court erred by excluding relevant evidence as to [a]ppellee's post-motor vehicle accident conduct, to wit, the assistance he sought from Todd Slowey and Attorney Gregory Gilson.
 "VII. The jury's verdict was contrary to the clear and manifest weight of the evidence when the evidence is evaluated upon the proper legal standards.
 "VIII. The [c]ourt erred by denying the Motion for JNOV or, in the alternative, the Motion for a New Trial."
In its first assignment of error, appellant asserts that the trial court erred by overruling its motion for summary judgment.
The standard for determining a motion for summary judgment is well-established in Ohio. In order for a summary judgment to be granted, the moving party must prove:
 "* * * (1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
Civ.R. 56(C) states that:
 "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"
The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296:
 "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. Id. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "[w]e review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
Appellant identified those portions of the record, which it claimed demonstrated the absence of a genuine issue of fact on a material element of appellee's claim. Pursuant to Dresher, the parts of the record are those evidential materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc. In the case at bar, the record is devoid of evidence proving that a copy of appellee's deposition was filed. Appellant did not attach a certified copy of the deposition to its motion for summary judgment. Further, the language of the insurance policy was ambiguous and none of the materials attached to appellant's motion for summary judgment provided any unequivocal meaning to the terms "replacement car" and "permanently inoperable."[5] Therefore, under a Dresher
analysis, appellant has not demonstrated specific Civ.R. 56(C) evidence showing there was no genuine issue of fact.
Nonetheless, even if adequate evidence was contained in the record, there were ambiguities that created issues of genuine fact regarding the meaning of the terms "replacement car" and "permanently inoperable," which were used in appellant's policy with appellee. In Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 66, the Supreme Court of Ohio held:
 "`If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241
* * *. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.' Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322
* * *." (Parallel citations omitted).
Here, from the four corners of appellee's insurance policy with appellant, the phrase "mechanical breakdown rendering a car permanently inoperable" is susceptible to more than one meaning. Thus, appellant's first assignment of error is without merit.
In its second assignment of error, appellant contends that the trial court erred by not ruling that the insurance policy language was clear and unambiguous and did not afford coverage to appellee for the July 9, 1996 accident.
In the case at hand, a replacement car, as defined by appellee's policy with appellant is:
 "* * * a car * * * that you own and which has taken the place of the car described in the Declarations Page due to:
 a. termination of your ownership of the car described on the Declarations Page; or
 b. mechanical breakdown or deterioration of the car described on the Declarations Page, rendering it permanently inoperable."
The court in DeMatteis v. Am. Community Mut. Ins. Co. (1992),84 Ohio App.3d 459, 462, stated:
 "It is well settled that, `where the meaning of language used in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured.' Blohm v. Cincinnati Ins. Co. (1988), 39 Ohio St.3d 63, 66
* * *." (Parallel citations omitted.)
Hence, language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer. King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus;Wayne Mut. Ins. Co. v. Mills (1996), 118 Ohio App.3d 146,151-152.
Again, as indicated in appellant's first assignment of error, the phrase "mechanical breakdown rendering a car permanently inoperable" is susceptible to more than one interpretation. At the trial, both of appellant's witnesses gave different examples as to what they considered a "permanently inoperable" car. Began referred to cars involved in floods or hit by trains, whereas Kreiner mentioned cars that are crushed, burned, rusted, involved in severe collisions, or have had the firewall replaced. Further, none of the witnesses, including appellee, were able to offer an example of a mechanical breakdown rendering a vehicle permanently inoperable. Thus, it is our view that the policy language was unclear and ambiguous. Appellant's second assignment of error is not well-founded.
In its third assignment of error, appellant claims that the trial court committed an error by not granting its motion for a directed verdict.
Preliminarily, we note that in Chem. Bank of New York v.Neman (1990), 52 Ohio St.3d 204, 206, the Supreme Court of Ohio held that "a motion for directed verdict which is denied at the close of plaintiff's evidence must be renewed at the close of all evidence in order to preserve the error for appeal." In the present case, the record indicates that appellant failed to renew its motion for directed verdict after the close of all the evidence. Hence, appellant waived its right to appeal the denial of the motion.
Even assuming that appellant had renewed its motion for directed verdict, it is our view that appellant's assertion lacks merit. A motion for directed verdict will only be successful if the plaintiff has not presented evidence on each element, but if the plaintiff has presented some evidence, the matter should go to the jury. Rayburn v. J.C. Penney Outlet Store (1982), 3 Ohio App.3d 463, syllabus. A motion for directed verdict should only be sustained where it presents a question of law and not fact. If reasonable minds could differ regarding the facts, the motion must be overruled. Carter-Jones Lumber Co. v. Eblen (1958), 167 Ohio St. 189,199. The standard for deciding a motion for directed verdict is set forth under Civ.R. 50(A)(4), which provides:
 "* * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In the case sub judice, a review of the record indicates that after construing the evidence most strongly in favor of appellee, reasonable minds could differ with respect to the language in the insurance policy as mentioned in the first two assignments of error. Therefore, we conclude that the trial court did not err in overruling appellant's motion for directed verdict, in part, at the close of appellee's evidence. Appellant's third assignment of error is overruled.
As appellant's fourth and fifth assignments of error are interrelated, they will be addressed in a consolidated fashion. In its fourth assignment of error, appellant claims that the trial court erred by not providing the jury with instructions to give words in a contract their plain and ordinary meaning according to common usage in daily life. Additionally, in its fifth assignment of error, appellant maintains that the trial court erred by not instructing the jury to disregard sympathy in its charge.
Generally, a trial court should give requested instructions "* * * if they are correct statements of the law applicable to the facts in the case * * *." Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591. However, jury instructions must be viewed in their totality. Margroff v. Cornwell Quality Tools, Inc. (1991),81 Ohio App.3d 174, 177; Yeager v. Riverside Methodist Hosp.
(1985), 24 Ohio App.3d 54, 55. If the totality of the instructions clearly and fairly express the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93;Margroff at 177. A strong presumption exists in favor of the propriety of jury instructions. Brooks v. Mihm (May 3, 1995), Pickaway App. No. 93 CA 24, unreported, at 2, 1995 WL 264861. Instructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. Margroff at 177; Yeager at 55.
In the present case, at the conclusion of the evidence, the trial judge gave the jury the following instructions:
 "* * * It is not necessary that the parties use any particular words, any particular actions or any particular form of agreement. Words and phrases commonly used in daily life are sufficient if they, in fact, make an agreement. * * *
 "Now, the contract in this matter is a policy of insurance between [appellee] and [appellant]. * * *
 "The first issue you must decide then is whether the policy of insurance from [appellant] provided coverage to [appellee] for the 1988 Ford Tempo as a replacement vehicle as defined in the policy of insurance on the date of the accident * * *. In doing so, review the policy, * * * consider the testimony and then apply to the language of the policy the interpretations which you rely on in your daily lives. * * *"
Upon a review of the instructions given to the jury, it is our determination that no error was committed. The jury was instructed to give the words in the policy the interpretations which they rely on in their daily lives. Although the trial court may not have given the jury a verbatim recitation of Ohio Jury Instruction 253.04[6], after considering the totality of the instructions, it is our view that the instructions were a clear and fair expression of the law.
Turning to appellant's contention that the trial court erred by not instructing the jury to disregard sympathy in its charge, both parties agree that in the court's opening remarks, it did direct the jury not to be influenced by sympathy, prejudice, or passion towards any party, witness, or attorney. However, appellant incorrectly alleges that at no other time during the trial, did the court re-instruct the jury as to sympathy. Upon a review of the record, we note that after the trial judge instructed the jury as to the applicable law in the case, he stated that he was going to instruct them on how to conduct their deliberations and prepare their verdict. Specifically, he said:
 "[n]ow, you must not be influenced in your consideration by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide all disputed questions of fact, and to apply the instructions of the Court to your findings and to render your verdict accordingly."
Accordingly, we conclude that the jury was properly instructed not to decide the case based on sympathy. Appellant's fourth and fifth assignments of error lack merit.
In its sixth assignment of error, appellant declares that the trial court erred in excluding evidence regarding appellee's post-motor vehicle accident conduct through his brother-in-law and attorney at the time.
A trial court has broad latitude in determining the admissibility of evidence in a case. The admission or exclusion of evidence rests within the sound discretion of the trial court.Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271; State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. A reviewing court must limit its analysis to whether the trial court's exclusion of evidence constituted an abuse of discretion.Rigby at 271, citing State v. Finnerty (1989), 45 Ohio St.3d 104,107. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
We conclude that the trial court did not abuse its discretion in excluding Began's testimony as to the face sheet records of the statements made by appellee's brother-in-law to appellant's agents and as to the letter written by the appellee's original attorney. First, appellant's witness, Began, who was called to testify as to the statements made by appellee's brother-in-law never actually spoke with appellee's brother-in-law. Secondly, although appellee admitted he was aware that both his brother-in-law and attorney made contact with appellant's agents, he testified that he did not know or direct what exchanges took place between the parties. Nor did he instruct either individual to lie in his behalf. Essentially, appellee was claiming that any agency with his brother-in-law and attorney was limited in nature. Thus, if they exceeded that agency, he was not responsible as he neither instructed them to do so nor did he ratify their acts. Since appellee was not shown to be aware of the content of the conversations that occurred, such testimony may have been unduly prejudicial to his case for purposes of impeachment.
Moreover, the admissions of appellee's brother-in-law's statements would have allowed appellant to impugn the credibility of appellee with statements that appellee had not made, assented to, or authorized. It is our determination that the trial court's ruling was not an abuse of discretion. Appellant's sixth assignment of error is not well-taken.
In its seventh assignment of error, appellant alleges that the verdict was against the manifest weight of the evidence.
In assessing a claim that a judgment in a civil matter is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In the case at hand, appellee testified that he did not know of a mechanical breakdown that would render a car inoperable. As previously assessed under appellant's second assignment of error, Began referred to cars involved in floods or hit by trains, and Kreiner mentioned cars that are crushed, burned, rusted, involved in severe collisions, or have had the firewall replaced. Further, Began and Kreiner could not give an example of any such incident; therefore, further establishing the ambiguousness of the term "replacement car" in the insurance policy. Consequently, the jury verdict was supported by competent, credible evidence and was not against the manifest weight of the evidence. Appellant's seventh assignment of error lacks merit.
In appellant's eighth assignment of error, appellant avers that the trial court committed an error by overruling its motion for judgment notwithstanding the verdict and/or new trial. Civ.R. 50(B) governs motions for judgment notwithstanding the verdict. It states, in part, "a party may move to have [a] verdict and any judgment thereon set aside and to have judgment entered in accordance with [the] motion * * *. [B]ut no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence." A motion for a judgment notwithstanding the verdict presents a question of law regarding the sufficiency of the evidence. See Jenkins v. Krieger (1981),67 Ohio St.2d 314, 317-319. Thus, if reasonable minds could reach different conclusions regarding the evidence, such motion must be denied. Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees (1986),28 Ohio St.3d 13, 15.
Here, the trial court did not err by failing to grant appellant's motion for judgment notwithstanding the verdict. The record included substantial evidence to support the jury's conclusion that the Tempo was insured under the terms of appellee's policy.
The trial court also did not err by failing to grant a new trial. A new trial should be granted when the court finds that it committed an error of law during trial. Sanders v. Mt. SinaiHosp. (1985), 21 Ohio App.3d 249, paragraph one of the syllabus. No such error was committed here.
In the present matter, the jury applied the law, as it was instructed, to the facts of the case, as found by it as the trier of fact, and rendered a verdict. There is no suggestion that there was insufficient evidence upon which the jury could have predicated its verdict against appellant. Accordingly, the trial court properly denied appellant's motion for judgment notwithstanding the verdict, and thus, appellant's eighth assignment of error is overruled.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Willoughby Municipal Court is affirmed.
 _________________________________ DONALD R. FORD, Presiding Judge
CHRISTLEY, J., O'NEILL, J., concur.
[1] The original complaint listed $1,238.66 as the prayer for relief. However, the complaint was amended on April 14, 1998, to the amount indicated.
[2] A copy of that pleading is not contained in the transcript of docket.
[3] When appellee was asked to give an example of a "mechanical breakdown that would render [a car] permanently inoperable," he was unable to offer one.
[4] On cross-examination, appellant's attorney commented that appellee presented no evidence, such as a receipt, that the Volkswagen was towed from his home.
[5] Some of the materials attached to appellant's motion for summary judgment included the automobile policy itself and the declarations pages with the different dates and the different vehicles covered under the policy. However, these items did not clarify the ambiguity of the terms "replacement car" and "permanently inoperable."
[6] Ohio Jury Instruction 253.04 states that that "* * * [i]n general, words in a contract are given their plain and ordinary meaning according to our common usage in daily life."