**LOURA, Admr., et al., Appellants,**

**v.**

**ADLER et al., Appellees.**

[Cite as *Loura v. Adler* (1995), 105 Ohio App.3d 634.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940312.

Decided Aug. 9, 1995.

636

*Wolske & Blue, Michael S. Miller* and *Maryellen C. Spirito,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur, John A. Simon* and *David S. Lockemeyer,* for appellees.

*Per Curiam.*

The plaintiffs-appellants, Dennis and Candy Loura ("the Louras"), bring this appeal from the judgment entered in favor of the defendants-appellees, Dr. John Adler and Mount Auburn Obstetrics and Gynecologic Associates, in an action to recover compensatory damages for the stillbirth of their child. Judgment was entered in favor of the defendants-appellees after a jury returned a verdict in their favor. The Louras assert two assignments of error: (1) that the trial court erred by giving an improper jury instruction; and (2) that the trial court erred by allowing testimony from an expert witness not properly identified as such prior to trial. Although we overrule the second assignment of error, we find merit in the first assignment of error and reverse the judgment below because of the prejudicial nature of the improper jury instruction.

The appellees, presumably upon the authority of R.C. 2505.22, have themselves asserted a single assignment of error: that the trial court erred by admitting over objection the testimony of the Louras' expert witness absent a proper foundation.[1] In view of our decision to sustain the Louras' first assignment we address the appellees' assignment on its merits and find that it is not well taken.

## I

The medical malpractice action brought by the Louras against the appellees was premised on their theory that Dr. Adler failed adequately to diagnose and render appropriate treatment for Candy Loura's cervical incompetence during her pregnancy. To establish their theory, the Louras presented the expert testimony of Dr. William Hummer, a board-certified obstetrician and gynecologist who was also a clinical instructor of obstetrics and gynecology at the University of Cincinnati. Dr. Hummer testified that Dr. Adler fell below the standard of practice when he failed to recognize a presumptively incompetent cervix based upon Candy Loura's medical history, which included a previous loss of a second-trimester infant.

In their first assignment of error the Louras assert that, because they introduced positive evidence through Dr. Hummer's expert testimony that Dr. Adler's negligence was the proximate cause of the stillbirth of their child, the trial court erred when it gave, over objection, the following jury instruction:

"[I]f the stillbirth that's complained about might well have resulted from any one of several causes, then it is necessary and incumbent upon the Louras to

---

1. The record reflects that the appellees filed a notice of cross-appeal in the trial court, but it is clear that they do not seek fundamentally to change the final judgment entered below. Under these circumstances, a cross-appeal is neither necessary nor appropriate.

produce evidence which will exclude the operation of those causes for which Dr. Adler is under no legal obligation."

Citing this court's decision in *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 627 N.E.2d 564, the Louras argue that this jury instruction was prejudicial error because it misstated the law and improperly imposed upon them the additional burden of disproving other possible causes of their child's stillbirth when they had already introduced legally competent evidence that Dr. Adler's negligence was the cause. We agree.

■ In *Kurzner*, this court discussed a plaintiff's burden in negligence actions involving a multiplicity of possible causes, some attributable to the defendant's negligence and others not. *Id.* at 682–683, 627 N.E.2d at 569–570. As we noted in *Kurzner*, in such cases a distinction must be drawn between a plaintiff who introduces positive evidence from which the jury can infer a cause attributable to the defendant's negligence and a plaintiff who does not present such evidence. Only in the latter case is it incumbent upon the plaintiff to produce evidence "which will exclude the effectiveness of those causes for which defendant is not legally responsible." *Gedra v. Dallmer Co.* (1950), 153 Ohio St. 258, 41 O.O. 274, 91 N.E.2d 256, paragraph two of the syllabus. This is merely to say that a plaintiff who cannot produce any affirmative evidence of the defendant's negligence, leaving it but one of several equally valid theoretical causes for the actionable injury, must then undertake a process of elimination whereby all other nonnegligent causes are effectively disproven. Otherwise the plaintiff would be asking the fact finder merely to speculate in his or her favor, a latitude the law does not grant.

■ In the case of a plaintiff who is able to produce positive evidence of the defendant's negligence as a cause for his or her injury, however, there is no additional burden on the plaintiff to produce evidence to negate other causes. Thus, in the case of a fire, where the plaintiff can produce affirmative evidence of the defendant's negligence, such as eyewitness testimony that the defendant was smoking cigarettes near the point of origin soon before the fire started, and the nature of the fire was consistent with that caused by a discarded cigarette butt, there is no additional burden on the plaintiff to disprove all other causes of the fire such as arson or spontaneous combustion. *Westinghouse Elec. Corp. v. Dolly Madison Corp.* (1975), 42 Ohio St.2d 122, 71 O.O.2d 85, 326 N.E.2d 651. In such a case the plaintiff may properly go to the jury on the evidence of negligence presented.

In *Kurzner*, the instruction given, similar to the one in the present case, was as follows:

" 'If you find that Dennis Kurzner's loss of eyesight might have resulted from one of several causes, it is the plaintiff's burden to produce evidence that excludes the effectiveness of those causes for which Dr. Sanders is not legally responsible. If plaintiff fails to produce such evidence, you must find for Dr. Sanders.' " *Id.*, 89 Ohio App.3d at 682, 627 N.E.2d at 569.

Commenting on this instruction, this court in *Kurzner* noted that the trial court did give the proper instruction on proximate cause elsewhere. *Id.*, 89 Ohio App.3d at 682, 627 N.E.2d at 569. However, the taint of the improper instruction was still considered sufficiently prejudicial to warrant reversal. As we stated in *Kurzner*:

"Where the plaintiff has established facts from which an inference of negligence can properly be drawn, the plaintiff does not have to disprove all other possible causes to prevail. In this case there was sufficient evidence from which the jury could find the defendant was negligent. This jury instruction was error because it placed an improper burden of proof on the plaintiff and requires a reversal of this case." *Id.*, 89 Ohio App.3d at 683, 627 N.E.2d at 570.

█ The appellees remonstrate in opposition to the Louras' first assignment of error that the present case is unlike *Kurzner* because the Louras did not present legally competent evidence to support an inference of negligence. This argument is premised on their assertion that Dr. Hummer's testimony was not phrased with the requisite degree of medical probability because neither the questions posed to him nor the responses he gave contained the talismanic language "to a reasonable degree of medical certainty." This argument is specious, however, because trial counsel clearly prefaced her direct examination of Dr. Hummer by advising him at the outset that each question being posed to him was meant to solicit his opinion to a "reasonable degree of medical probability" and that such phraseology would not be repeated to save time. As the Louras point out in their brief, no objection to this proposal was made by defense counsel and it is disingenuous for the appellees now to suggest that this time-saving measure, silently acquiesced in at trial, renders Dr. Hummer's testimony legally incompetent.

We also reject the appellees' argument that, even if it is assumed that Dr. Hummer's testimony was legally competent, the error in the jury instruction was harmless given the propriety of the remaining jury instructions. We have considered the jury instructions in their entirety and, consistent with our holding in *Kurzner*, we find the prejudicial effect of the incorrect jury instruction, since it specifically addressed the issue of multiple causes, to be extremely damaging and tantamount to imposing an improper secondary burden upon the Louras.

The Louras' first assignment of error is, therefore, well taken.

## II

■ In their second assignment of error, the Louras assert that the trial court violated its own scheduling order by allowing the appellees to call as an expert witness C. Andrew Combs, Candy Loura's subsequent treating physician. Dr. Combs was identified as an expert witness by the defense less than two weeks prior to trial but almost three months past the deadline established in the trial court's scheduling order.

The Louras argue that they were prejudiced by the timing of the appellees' identification of Dr. Combs as an expert witness, but in neither the record, their brief, nor oral argument do we find sufficient evidence or argument to justify a finding of prejudice. As the appellees point out, the Louras had unrestricted access to Dr. Combs as Candy Loura's treating physician and in fact prepared him for a discovery deposition and cross-examined him during the discovery deposition.

■ The decision whether to sanction a party by the exclusion of expert testimony is largely a matter of discretion for the trial court. See *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313. Absent any strong showing of prejudice or surprise, we do not find anything unreasonable, arbitrary, or unconscionable in the trial court's failure to exclude the expert testimony of Dr. Combs. Thus, we find no abuse of the trial court's discretion in this matter and overrule the Louras' second assignment of error.

## III

In their own assignment of error, the appellees argue that Dr. Hummer's expert opinion lacked the evidentiary foundation required by Evid.R. 703 and 705. Specifically, they assert that Dr. Hummer was impermissibly allowed to give his opinion based upon depositions which were not of record and upon medical records which were not admitted into evidence at the time he gave his testimony.

Evid.R. 703 and 705 provide, respectively:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

The record discloses that Dr. Hummer, following questions establishing his credentials, was asked what medical records he had reviewed concerning this case. Dr. Hummer identified certain medical records and stated additionally that

he had reviewed the depositions of Drs. Wendel, Adler, Fitzgerald, Fackler, Combs, and Lutter. The authenticity of the medical records identified by Dr. Hummer had been stipulated to by the parties and the records were later admitted into the record. It is undisputed, however, that the physicians' discovery depositions were never filed with the court and never made part of the trial record.

Dr. Hummer was then instructed by the Louras' trial counsel to understand that his opinion was being solicited to a reasonable degree of medical probability based upon his education, training, and experience, as well as his review of the medical records and depositions. He was then asked, however, what were the significant aspects of the case as they bore upon his opinion. He responded:

"I think the significant events of this case include a vaginal delivery in 1976; a surgical procedure in 1985 that's called a D & C, which is a dilating of the cervix, which is the mouth of the womb; another D & C in 1985, which was also accompanied with a surgical procedure called a conization of the cervix or a circumferential piece of tissue around the opening of the cervix which is surgically removed. She had another operative procedure in 1990 involving dilation of the cervix to insert an instrument to look inside the uterus; and, finally, a preterm delivery in 1990 at about twenty weeks of pregnancy."

Following the presentation of the Louras' case, trial counsel for the appellees renewed their earlier objection that Dr. Hummer's testimony was infirm because it was based upon facts and data not of record, *i.e.*, the physicians' discovery depositions never filed with the court. The trial court overruled the objection, stating:

"Well, you know, he said that so generally, but he stated the specific facts that he accepted as true or he accepted on which he based his opinion and those facts were: the delivery in 1976; there was a D & C in 1985; there was a D & C abortion, elective abortion in 1985; there was a dilation of the cervix in 1990 with a laparotomy and also hysteroscopy, whatever, I'm not pronouncing it right; and then the miscarriage in 1990 in the second trimester. This is really the significant events that he testified to which formed the basis of his opinion.

"Now, regardless of the fact that he may have reviewed a number of records, including depositions, these significant events are not solely included in the depositions, which I have never seen. In fact, these significant events I think are included in the exhibits themselves, so I think I am going to overrule you because of that basis."

Evid.R. 703 was modified by the syllabus of *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, which softened the foundational requirement by stating that "[w]here an expert bases his opinion, *in whole or in major part*, on

facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." (Emphasis added.) Thus, the issue, as properly comprehended by the trial court, was whether Dr. Hummer's opinion was based, in major part, upon facts or data either perceived by him or admitted into evidence. See *Stephenson v. Guda* (Mar. 15, 1995), Pike App. No. 532, unreported, 1995 WL 117610.

We concur with the trial court that, although Dr. Hummer referred to the depositions as part of his review, he clearly based his opinion in major part upon medical procedures and events in Candy Loura's medical history, all of which were uncontroverted and recounted in stipulated medical records ultimately made part of the trial record. We find no Evid.R. 703 violation with respect to Dr. Hummer's having read the physicians' discovery depositions as part of the background material he reviewed in order to familiarize himself with the case. We note further that all but one of the deposed physicians testified at trial and the appellees have not presented any evidence or argument to the effect that the physicians' testimony at trial was substantially different than that given upon deposition. Cf. *Stephenson, supra.*

■ With respect to the argument that Dr. Hummer's opinion was infirm because the medical records upon which he relied were not admitted into evidence until after his testimony, we note initially that we do not find this specific objection made below. Clearly the thrust of the appellees' objection to Dr. Hummer's testimony was that it was based upon depositions not filed with the court.

Even assuming *arguendo,* however, that this issue has been preserved, we do not find any prejudicial error resulting from the fact that the medical records upon which Dr. Hummer relied were introduced subsequent to his testimony. As noted by the court in *Stephenson,* "Evid.R. 703 does not specify that only evidence admitted at trial prior to the time the expert testifies may be used as a basis for the expert's opinion." While Evid.R. 705 does require that the underlying facts or data must be disclosed before the expert gives an opinion, Dr. Hummer clearly specified, before giving his opinion, the particular facts, or events, upon which he relied.

■ As noted by Professor Weissenberger in his treatise, the purpose of Evid.R. 705 is merely to inform the jury of the basis for the expert's opinion, and the requirement that this disclosure occur before the giving of the opinion is simply a means of aiding the trier of fact in assessing the validity of that opinion. 1 Weissenberger's Ohio Evidence (1993) 18, Section 705.2. Even where the rule is not strictly followed, provided that the specific facts are eventually admitted into evidence, any error is harmless unless there is some demonstrable prejudice. See *Wells v. Miami Valley Hosp.* (1993), 90 Ohio App.3d 840, 631 N.E.2d 642.

Given the fact that the medical records in this case were not controverted and were ultimately made part of the trial record, we find nothing of a prejudicial nature in the order of presentation of Dr. Hummer's testimony. As this court has previously held, a physician is entitled to express an expert opinion in response to a hypothetical question that assumes the validity of the medical records in evidence. *Blakeman v. Condorodis* (1991), 75 Ohio App.3d 393, 599 N.E.2d 776.

The appellees' assignment of error is, therefore, overruled.

## IV

The Louras' second assignment of error and the appellees' assignment of error are overruled. However, having sustained the first assignment of error in the Louras' appeal, we reverse the judgment below and remand this cause to the trial court for further proceedings consistent with the law set forth herein.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., MARIANNA BROWN BETTMAN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.