DECISION AND JOURNAL ENTRY
Plaintiff-appellant Patricia Raymond, executrix of the estate of Gerald Raymond, Sr., appeals from a judgment order entered in the Summit County Court of Common Pleas, denying her motions for judgment notwithstanding the verdict or for a new trial after a jury verdict for defendants-appellees, Goodyear Tire Rubber Company, the administrator of the Bureau of Workers' Compensation, and the Industrial Commission of Ohio. The jury had determined that appellant was not entitled to participate in the workers' compensation program for the death of her husband. We affirm.
Gerald Raymond was injured on the job on December 5, 1995. A workers' compensation claim filed by Mr. Raymond for injuries he sustained as a result of this accident was allowed. Five months later, on May 8, 1996, Mr. Raymond went to his family doctor, who had also treated him for his work-related injury, complaining of ankle swelling and pain in his right foot. The problem was diagnosed as an infected Baker's cyst and he was hospitalized the same day at Akron City Hospital. When his condition did not improve, Mr. Raymond was transferred on May 18, 1996, to the Cleveland Clinic. Mr. Raymond was discharged from the Cleveland Clinic on May 28, 1996, but was readmitted on June 15, 1996. He was discharged again on June 24, 1996. He died August 20, 1996. The death certificate signed by Mr. Raymond's family physician, Dr. Dennis McCluskey, lists the cause of death as "cerebral hemorrhage," followed by "liver failure" and "coagulopathy."
Mrs. Raymond filed a death benefits claim with the Ohio Bureau of Workers' Compensation, alleging her husband's death was a direct and proximate result of the injuries he suffered in the work-related accident. The application was denied. On March 24, 1998, Mrs. Raymond filed an appeal from the Industrial Commission's denial of her death benefits claim in Summit County Court of Common Pleas.
The sole issue at trial was whether Mr. Raymond's death was a direct and proximate result of his work-related injury. In support of Mrs. Raymond's claim, Dr. McCluskey testified that the injuries Mr. Raymond suffered at work triggered a "cascade of events" that led to his death. Appellees' expert, Dr. Kevin Trangle, testified that, in his opinion, Mr. Raymond's death was caused by factors associated with his pre-existing alcoholism. After a two-day trial, the jury rendered a verdict for appellees, disallowing appellant's claim. The verdict was journalized on April 20, 1999. On April 30, 1999, appellant filed a motion for judgment notwithstanding the verdict and, in the alternative, a motion for new trial. After a hearing, the court entered an order on June 24, 1999, denying both motions. A timely notice of appeal from the trial court's order denying these motions was filed July 22, 1999.
Appellant raises two assignments of error:
 I. IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO ADMIT IN EVIDENCE THE EXPERT TESTIMONY OF DR. TRANGLE AS TO THE DECEDENT'S ALCOHOLISM WITHOUT LAYING A FOUNDATION THEREFOR OR GIVING THE FACTS UPON WHICH THE OPINION IS BASED.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S COUNSEL'S REPEATED REQUESTS TO STATE THE GROUNDS FOR HIS OBJECTIONS TO THE EXPERT TESTIMONY OF DR. TRANGLE.
 The issues raised in these assignments of error will be discussed in the order presented.
In her first assignment of error, appellant argues that the testimony of Dr. Trangle should have been excluded at trial, because he failed to establish a proper foundation for his testimony, pursuant to Evid. R. 705. We disagree.
A determination as to the admissibility of expert testimony is a matter within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Miller v. BikeAthletic Co. (1998), 80 Ohio St.3d 607, 616. Moreover, "[t]he decision whether to sanction a party by the exclusion of expert testimony is largely a matter of discretion for the trial court."Loura v. Adler (1995), 105 Ohio App.3d 634, 640, citing to Pang v.Minch (1990), 53 Ohio St.3d 186, 194. A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Foundational requirements for an expert's opinion testimony are set forth in Evid. R. 703 and 705. Patrick v. PainesvilleCommercial Properties (1997), 123 Ohio App.3d 575, 586. Evid. R. 703 authorizes two permissible sources of facts and data upon which an expert may base his opinion:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.
 The Ohio Supreme Court has noted that Evid. R. 703 is written in the disjunctive. Therefore, the rule is satisfied when an expert opinion is based either on perception or on facts or data admitted in evidence. State v. Solomon (1991), 59 Ohio St.3d 124, 126. In her brief, appellant acknowledges that the requirements of Evid. R. 703 were met here, since the medical records containing the facts upon which Dr. Trangle based his testimony were admitted in evidence.
Evid. R. 705 provides that the facts or data upon which the expert's opinion is based are to be disclosed prior to rendering the opinion:
 The expert may testify in terms of opinion or inference and give his reason therefor after disclosure of the underlying facts or data.
 It is Evid. R. 705 that appellant argues mandates exclusion of Dr. Trangle's testimony for failure to preface his opinions with disclosure of the facts upon which those opinions were based. In particular, appellant contends that Dr. Trangle should not have been permitted to testify as to the effects of Mr. Raymond's alcoholism, because there was no evidence in the record, prior to his testimony, that Mr. Raymond was an alcoholic.
The purpose of Evid. R. 705 is to aid the trier of fact in assessing the validity of the expert's opinion.
 Requiring the expert to inform the jury of the basis supporting his or her opinion is both sensible and logical. * * * The opinion would be irrelevant and misleading if grounded on facts ultimately discounted by the trier of fact. * * * Thus, the trier of fact cannot adequately assess the validity of expert testimony without knowing the particular facts which support the expert opinion. By requiring disclosure of the facts or data underlying the opinion prior to rendering the opinion, Ohio Rule 705 seeks to aid the trier of fact in its assessment of the validity of the expert's opinion.
 1 Weissenberger's Ohio Evidence (1993), 18, Section 705.2. (Footnotes omitted.), quoted in Wells v. Miami Valley Hosp.
(1993), 90 Ohio App.3d 840, 857.
Here, the trial transcript supports appellees' contention that these facts were fully disclosed before Dr. Trangle offered any opinion as to the cause of Mr. Raymond's death. The underlying facts upon which Dr. Trangle based his testimony were contained in Mr. Raymond's medical records, which Dr. Trangle reviewed, at the request of appellees' counsel, prior to trial.
 Q: Doctor, do you recall my asking you to review the entire medical chart of Mr. Gerald Raymond in November of 1997?
A: I do.
 Q: Okay. My question to you is I wanted you to advise me on the cause of his ultimate death in August of 1996. Is that not right?
A: That's correct.
 Q: Didn't I also, Doctor, ask you to do some independent medical research on the issues in this case with regard to alcoholism and the conditions Mr. Raymond was suffering from?
* * *
A: Yes, the answer is yes.
Q: And did you do so, Doctor?
A. Yes, I did.
 The medical records that Dr. Trangle reviewed included Dr. McCluskey's office records and records from Akron City Hospital and Cleveland Clinic, where Mr. Raymond was treated after diagnosis of the Baker's cyst in May, 1996. Facts contained in these records not only established an adequate foundation for Dr. Trangle's testimony concerning Mr. Raymond's alcoholism, but also provided the predicate support for his opinion that alcoholism was responsible for Mr. Raymond's death.
Dr. Trangle told the jury that blood tests in Dr. McCluskey's office records indicated that Mr. Raymond had suffered from alcoholism for some years prior to the 1995 workplace accident. Dr. Trangle said the blood tests, ordered by Dr. McCluskey in 1986, 1989, and 1991, showed elevated liver function tests or hepatitis and elevated red cells. He called this pattern of high liver tests and elevated red cells "highly suspicious of alcoholism." This evidence established the foundation for further testimony regarding the effects of Mr. Raymond's alcoholism on his health.
The transcript also shows that, throughout his testimony, Dr. Trangle identified the specific facts from Mr. Raymond's medical records upon which he relied in forming his opinions. Dr. Trangle testified that blood tests ordered by Dr. McClusky after the work-related accident in December, 1995, continued to exhibit elevated liver function levels. These tests indicated that Mr. Raymond was anemic and that he had "low and abnormal" platelets. From these tests, Dr. Trangle said it was evident that Mr. Raymond was suffering from coagulopathy — an inability to clot blood. Dr. Trangle said the low platelet count and coagulopathy apparent in these tests could not have resulted from the work-related accident. Dr. Trangle testified that a number of physical conditions associated with alcoholism contributed to the bleeding disorder that prevented Mr. Raymond's body from resolving the cerebral hemorrhage, which ultimately caused his death.
 Q: Prior to his death on August 20th, 1996, do you have an opinion to a reasonable degree of medical certainty as to whether or not Mr. Raymond was suffering from bone marrow suppression?
Appellant's counsel: Objection.
 Court: Well, from the records you've examined, may you draw that conclusion?
Witness: Yes, I may.
Court: All right. Then he has an opinion.
 Appellees' counsel: And, again, I'll ask you this based on all the records you have, Doctor. Do you have an opinion? What is it?
 A: * * *[H]e had bone marrow suppression and all the elements based upon a number of red cells, the number of platelets, yes, he did.
 Q: Do you have an opinion whether that contributed to his death?
A: It was a contributing factor, yes.
 Q: * * *[B]ased on the records you reviewed, was Mr. Raymond suffering from hepatitis?
 A: He's [sic] been suffering from hepatitis since 1986 up until the time of his death, yes.
Q: Did that contribute to his death?
A: Yes, it did.
 Q: Prior to his death was Mr. Raymond suffering from alcoholic cirrhosis of the liver?
A: He was suffering, yes.
Q: And did that contribute to his death?
 A: It contributed to the coagulopathy which contributed to his death, yes.
* * *
Q: What was the ultimate cause of Mr. Raymond's death?
 A: The ultimate cause was — proximate cause is the fact he had a bleeding disorder. Alcoholics * * * have bleeding disorders because of what I said, the bone marrow suppression, the liver problems. * * * Basically his alcoholism was responsible for his death for a variety of factors.
 It is apparent from the above that the requisite disclosure of underlying facts prior to an expert's testifying, as mandated in Evid. R. 705, was satisfied here.
Appellant further argues, however, that Dr. Trangle should not have been permitted to testify, because the medical records containing the facts upon which he based his opinions had not been admitted into evidence at the time Dr. Trangle took the stand. Appellant cites no authority for this argument.
The plain language of Evid. R. 705 does not require admission of predicate facts into evidence before an expert may testify. The rule states only that an expert may testify "after disclosure of the underlying facts or data." Evid. R. 703 requires that the facts or data upon which an expert relies must either be perceived or admitted in evidence. However, Rule 703 does not specify, where the basis of the testimony is admitted evidence, that only evidence admitted prior to the time the expert testifies may be used as a basis for the expert's opinion. See, Stephenson v. Guda
(Mar. 15, 1995), Pike App. No. 532, unreported. Neither rule then mandates the admission of predicate facts before the expert testifies.
Ohio courts that have addressed the issue of when predicate facts must be disclosed and/or admitted have held that failure to abide by the order of presentation prescribed in Evid. R. 705 is harmless error, provided that the specific facts are eventually admitted into evidence, unless there is some demonstrable prejudice. See, e.g., Wells v. Miami Valley Hosp., Patrick v.Painesville Commercial Properties, and Stephenson v. Guda, supra. In Wells, the Second District court concluded that the experts' failure to specify underlying facts before testifying was harmless error, where the facts were subsequently identified, because the jury was still able to utilize those facts to assess the validity of their opinions. The court noted that "the assessment of the validity of the expert testimony continues after the case is submitted to the jury." Id., 90 Ohio App.3d at 857.
In Loura v. Adler, the First District court addressed the precise issue raised by appellant here. In that case, the medical records containing predicate facts upon which the expert relied were not formally admitted until after the expert had testified. Nonetheless, the court found this was harmless error, where the expert had "clearly specified, before giving his opinion, the particular facts, or events, upon which he relied." Id.,105 Ohio App.3d at 642.
 Even where the rule is not strictly followed, provided that the specific facts are eventually admitted into evidence, any error is harmless unless there is some demonstrable prejudice. * * * Given the fact that the medical records in this case were not controverted and were ultimately made part of the trial record, we find nothing of a prejudicial nature in the order of presentation of [the expert's] testimony.
 Id., 105 Ohio App.3d at 642-43, citing to Wells, supra.
We find Loura persuasive. Error, if any, in admitting Dr. Trangle's testimony before the medical records had been formally admitted into the trial record was harmless error. Dr. Trangle specifically identified underlying facts in those records prior to giving his opinions. Moreover, the medical records here, as inLoura, were uncontroverted. Both sides had copies of the records to which their respective witnesses referred repeatedly without objection. Finally, as in Loura, the medical records containing the facts upon which Dr. Trangle relied were ultimately made part of the trial record without objection. In fact, it was appellant's counsel who formally offered the records into evidence at the close of appellees' case.
Appellant asserts that she experienced "demonstrable prejudice" from the admission of Dr. Trangle's testimony, because she would have won if he had not been allowed to testify. Since we have ruled that Dr. Trangle satisfied the foundational disclosure requirements of Evid. R. 705, appellant's claim of prejudice must be based on the alleged error in the admission of his testimony before the medical records were formally admitted.
Error in admission of evidence is not grounds for reversal, unless substantial rights of the complaining party were affected or it appears that substantial justice was not done. Civ.R. 61;O'Brien v. Angley (1980), 63 Ohio St.2d 159, 164. In determining whether a substantial right of a party has been affected, the reviewing court must decide whether the trier of fact would have reached the same decision, had the error not occurred. Hallworthv. Republic Steel Corp. (1950), 153 Ohio St. 349, paragraph three of the syllabus.
The fact that Dr. Trangle was permitted to testify before the medical records were admitted in evidence did not change the outcome of the case here. As was noted above, even though the records had not been formally admitted, the jury had been advised of the specific facts contained in those records upon which Dr. Trangle relied in forming his opinions. The jury was provided with this information, as required by Evid. R. 705, before Dr. Trangle expressed his opinions. Because both sides, throughout the trial, treated the medical records as if they were in evidence, the jury was not even aware that the records to which Dr. Trangle referred had not been formally admitted before he testified. Moreover, the jury's reliance upon the reliability of the facts contained in the records to assess the validity of Dr. Trangle's testimony was not compromised, since the medical records were subsequently admitted in evidence. Thus, the jury's verdict was unaffected by any delay in admitting the medical records. The result would have been the same, had the error not occurred.
In light of the above, appellant's first assignment of error is overruled. The trial court did not abuse its discretion in admitting Dr. Trangle's testimony, where the record shows that the foundational requirements of Evid. R. 705 were satisfied. Moreover, error, if any, in allowing Dr. Trangle to testify before the medical records were formally admitted in evidence was harmless, where no prejudice was demonstrated.
This court's conclusion as to the first assignment of error is also dispositive of the second. In the second assignment of error, appellant argues that the trial court abused its discretion in denying counsel's repeated requests to tell the court that his objections were based on his belief that no foundation had been laid for Dr. Trangle's testimony.
This court has ruled that a foundation for Dr. Trangle's testimony was properly laid in accordance with Evid. R. 703 and 705 and that any error in admitting his testimony before the medical records were formally admitted in evidence did not affect a substantial right of appellant. Evid. R. 103(A) provides in pertinent part:
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *.
For this reason, appellant's second assignment of error is also overruled and the judgment entered on the verdict in the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
SLABY, J., BATCHELDER, J., CONCUR