Yeager; Yeager et al., Appellants, v. Riverside Methodist Hospital, Appellee, et al.

(No. 84AP-54 — Decided March 21, 1985.)

Wolske & Blue and Walter J. Wolske, Jr., for appellants.

Bricker & Eckler, James S. Monahan and Michael J. Renner, for Riverside Methodist Hospital.

Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L.P.A., William A. Davis and Jerome S. Kalur, for William B. Merryman, M.D.

Reilly, P.J. Plaintiffs appeal the judgment of the trial court in favor of defendant, Dr. William B. Merryman, in plaintiffs' medical malpractice action. They advance two assignments of error:

"1. The trial court erred to the substantial prejudice of plaintiffs in charging the jury that in determining whether Dr. Merryman was medically negligent, they should consider his 'judgment.'

"2. The trial court erred to the substantial prejudice of plaintiffs in permitting the introduction into evidence of defendant's Exhibits C and D consisting of textbook examples of severe late deceleration patterns on a fetal heart monitor reading."

The partial transcript filed herein indicates that each party presented the testimony of an expert witness as to the standard of care which was required of Dr. Merryman in the delivery of Ryan Yeager. The expert, on behalf of defendant, testified that the printouts of the fetal heart monitor, produced prior to birth, indicated only slight distress on the part of the unborn child, insufficient to cause the asphyxia with brain damage which was suffered by Ryan, and that the damage most likely had occurred prior to the mother's admission and connection to the heart monitor. In order to demonstrate severe distress of the type which would cause injury, defendant offered two exhibits of monitor printouts reproduced from textbooks on the subject. The exhibits were admitted over objection. The jury returned a verdict in favor of defendant, and plaintiffs appeal.

Plaintiffs' first assignment of error focuses on the trial court's use of the word "judgment" in its charge to the jury, and argues that this improperly caused the jury to consider Dr. Merryman's subjective judgment in light of the circumstances presented, rather than an objective reasonable specialist standard. The charge on this issue reads, in part:

"This action is brought by the plaintiffs to recover damages for physical injuries claimed to have been caused by the negligence of the defendant. The plaintiffs must prove to you by the

greater weight of the evidence that the defendant was negligent, that the defendant's negligence proximately caused plaintiffs' injuries.

"The fact that the doctor's services did not fulfill expectations does not by itself, without more, prove that the doctor was negligent.

"A specialist is a physician who holds himself out as specially trained, skilled and qualified in a particular branch of medicine. The standard of care for a physician in the practice of a specialty is that of a reasonable specialist practicing medicine in that same specialty, regardless of where he practices. A specialist in any one branch has the same standard of care as all other specialists in that branch.

"If you find by the greater weight of the evidence that the defendant failed to use that standard of care, then you may find that he was negligent.

"Although some other physician in the specialty might have used a method of procedure different from that used by the defendant, this circumstance will not by itself, without more, prove that the defendant was negligent. The mere fact that the defendant used an alternative method of procedure is not by itself, without more, proof of his negligence. You are to decide whether the procedure used by the defendant was reasonably prudent and in accordance with the standard of care required of a specialist in his field of practice. The customary or routine method of procedure may be considered by you along with all the other facts and circumstances in evidence. Although a particular method may be customary, usual or routine, this circumstance will not of itself, without more, prove that method to be prudent. You are to decide whether the method of procedure used by the defendant was reasonably prudent and in accordance with the standard of care required of a specialist in his field of practice.

"In determining whether Dr. Merryman was medically negligent in his selection of the method of treatment or the manner and method by which he practiced his medical specialty in the care and treatment being rendered to Ryan Yeager prior to his birth, you should consider Dr. Merryman's judgment in the light of all the attendant circumstances at the time he acted. You should not judge a physician by after-acquired knowledge or the results of his treatment. The test is one of foreseeability or foresight. Considering all the facts and with the state of knowledge of the profession at the time he acted, as established by the evidence, the proper test is whether the treatment or method of treatment employed was in conformity with the accepted standards of skill and care at that time."

The proper standard of care by which defendant's conduct is to be measured is an objective standard, as stated in the first paragraph of the syllabus in *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127 [75 O.O.2d 184]:

"In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."

When viewed alone, the portion of the trial court's charge to the jury excerpted by plaintiffs suggests a subjective standard of care. However, a charge to the jury must be viewed in its totality, and if the law is clearly and fairly expressed, no reversal will be predicated upon error in a portion of the charge. *Wagenheim* v. *Alexander Grant*

& Co. (1983), 19 Ohio App. 3d 7, paragraph thirteen of the syllabus; *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 210 [24 O.O.3d 316]. When so considered, the charge on the appropriate standard of care is in accordance with the law as announced in *Bruni, supra,* and the use of the word "judgment" does not constitute prejudicial error.

Therefore, the first assignment of error is not well-taken and is overruled.

Plaintiffs' second assignment of error challenges the admission into evidence of two textbook examples of severe late decelerations which examples had been used during the testimony of defendant's expert witness. The witness analyzed the heart monitor tracings which were represented in the textbook examples, and testified to the reasonable standard of care of a physician in defendant's field if presented with these tracings. This testimony was admitted without objection. The textbook examples were then submitted to the jury, over objection, apparently as examples of the type of heart distress which would require intervention under the proper standard of care.

Subsequently, the witness analyzed heart monitor tracings of Ryan taken prior to delivery, and noted that they showed slight, if any, late deceleration in the child's heart rate. The witness then testified to the reasonable standard of care corresponding to the tracings presented by Ryan and noted that the conditions reflected in the tracings did not require intervention to prevent harm to the child.

The admission of exhibits into evidence is within the broad discretion of the trial court. Absent the demonstration of an abuse of that discretion, the admission of such exhibits is not reversible error. See, *e.g., Avon Lake* v. *Anderson* (1983), 10 Ohio App. 3d 297, 299.

The witness testified concerning the exhibits without objection by plaintiffs. The exhibits were then admissible, within the discretion of the trial court, as demonstrative of the witness' testimony. Moreover, it is not necessary that the textbooks be proven authoritative on the subject, for the witness merely used the text examples in support of his testimony as to the applicable standard of care, and not as independent proof of that standard of care. Further, it was not significant that the textbook examples showed severe late deceleration when there was no testimony that Ryan suffered such severe deceleration, for the examples were merely illustrative of what a reasonable, prudent physician would look for in determining the need for prompt intervention.

In sum, Exhibits C and D were probative to support the opinion of defendant's expert that fetal distress did not exist. The ultimate issue, of course, was for the jury's determination which the trial court recognized when it noted its rationale for admitting the exhibits:

"THE COURT: There has been testimony concerning these exhibits and they will help the jury understand the testimony, and over your objection, the Defendant, I mean the Plaintiff[s]."

Thus, there was no abuse of the trial court's discretion by permitting the introduction into evidence of defendant's Exhibits C and D.

Therefore, the second assignment of error is not well-taken and is overruled.

For the foregoing reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

NORRIS, J., dissents.

STRAUSBAUGH, J., concurring. I fully concur with the opinion of Judge

Reilly and the affirmance of the judgment below.

As noted in the majority opinion, a reading of the instructions as a whole does not indicate that the charge given concerning the standard of care required was improper; nor do I feel that it was of any relevance that the instructions were originally drafted by the defense, in light of the overall clarity of the charge and its proper legal basis.

In regard to the two textbook illustrations, as noted by my esteemed colleague in his dissent, plaintiffs alleged at trial that a proper reading of the fetal heart monitor tracings would have indicated that the infant was under severe stress and required immediate action by way of cesarean section. Although other factors indicating fetal distress may arise requiring intervention when a fetal heart monitor shows otherwise, this was not plaintiffs' contention. Evidence of heart monitor tracings, as interpreted by defendant's expert witness, requiring immediate action were, therefore, relevant to an evaluation of the actual heart monitor tracings of Ryan Yeager.

NORRIS, J., dissenting. As I am unable to agree with either the majority's conclusions, or its view of the record, I respectfully dissent.

In the first place, as will be pointed out later, defendant's expert did not testify that Ryan's printouts indicated only slight distress. Second, the majority's characterization of defense counsel's purpose in offering the textbook exhibits is misleading. An accurate characterization of that portion of the transcript is that defense counsel displayed to his expert heart monitor tracings from two medical textbooks, and the expert testified that the tracings depicted severe late decelerations which would lead a prudent physician to conclude that the fetus was experiencing severe distress. Defense counsel then said only that he was offering the exhibits as a predicate to his next question of the witness.

Plaintiffs' second assignment of error challenges the admission into evidence by the trial court of copies of pages from two textbooks, showing examples of heart monitor tracings. The majority says that the trial court did not abuse its discretion in admitting those exhibits. Because the admission by a trial court of irrelevant and misleading evidence constitutes an abuse of discretion, the circumstances underlying the assignment of error deserve a more thorough examination than the cursory treatment afforded them by the majority.

Defendant's expert medical witness testified that these heart monitor tracings represented severe late decelerations which would demonstrate that a fetus was under severe stress, and went on to describe the steps he believed should be taken by a reasonable and prudent physician should he be confronted with such monitor tracings. There was no objection to this testimony. As plaintiffs have not raised an assignment of error concerning the testimony, one must assume that they recognize they waived error by failing to object. However, when defense counsel then sought to give the exhibits (as yet not admitted into evidence) to the jury, plaintiffs did object. The objection was overruled. Surely, the majority does not mean to say that, by failing to object to the testimony, plaintiffs waived objection to displaying the unadmitted exhibits to the jury, and to the admissibility of the exhibits. Defense counsel said only that he wanted the jury to have the exhibits "as a predicate to my next question." Counsel then proceeded to question the expert witness concerning the meaning of Ryan Yeager's actual monitor tracings; the textbook tracings were not referred to again in the course of this witness' testimony.

The witness analyzed Ryan's heart

monitor tracings and gave his opinion that, while the exterior monitor tracings showed some definite late decelerations, they were not in the severe range, and that later internal monitor tracings showed only very mild late deceleration. He concluded that defendant's response to the tracings had not breached the requisite standard of care.

Plaintiffs' contention at trial was that the fetal heart monitor tracings showed late heart decelerations which were indicative of fetal distress, and required that Ryan be delivered as soon as possible by cesarean section in order to avoid birth asphyxia and brain damage. They complain that, as there was no testimony indicating that Ryan's tracings showed severe late decelerations, and no testimony that only severe late decelerations of the nature exhibited in the textbook tracing would require such immediate surgical intervention, the exhibits were irrelevant to the issue at trial and misleading to the jury, as they invited the jury to make unwarranted comparisons with the actual tracings.

The argument is well-taken. Upon the state of the evidence, the textbook tracings represented two examples — not the only possible examples — of situations demanding surgical intervention. The witness did not testify that these textbook examples were of tracings depicting the only circumstances under which a cesarean section delivery would be required; nor did he say that surgical intervention would be required only in the event the late decelerations were severe; nor did he say that these textbook tracings depicted the sole possible examples of severe decelerations. As a consequence, and in view of there being no testimony that Ryan's decelerations were severe, it is difficult to understand the relevancy of the textbook tracings.

The natural consequence of giving to the jury textbook examples illustrating extremes, at a time when the expert was testifying concerning photographic "blow-ups" of Ryan's tracings, was to invite the jury to compare those examples with Ryan's tracings — to invite a premature deliberation by the jury into the medical significance of the obvious differences in the sets of tracings. Obviously, such a comparison, upon the state of the evidence at that time, was beyond the competence of lay jurors. If a comparison were to be made of the significance of the differences, it could only be made by utilizing medical expertise to interpret the tracings and differences. Rather than assisting the jury, the textbook examples only invited confusion. Their use, in the absence of expert testimony explaining their significance to the facts of this case, was almost certain to mislead the jury.

Over the objection of plaintiffs' counsel, the trial court permitted defense counsel to display the textbook examples to the jury before they had been admitted into evidence — they were admitted at a later point in the trial, again, over plaintiffs' objection. Permitting such a submission also constituted error, since it would be impossible to expect jurors to forget such graphic illustrations had the trial court later issued the proper ruling that the exhibits were inadmissible into evidence.

The second assignment of error should be sustained.

The first assignment of error is perplexing, when viewed in concert with the second.

Because the word "judgment" connotes subjectivity, trial courts should entertain its use in charges of this nature with great reluctance and skepticism. Indeed, the majority concedes that, when viewed alone, the portion of the trial court's charge to the jury excerpted by plaintiffs suggests a subjective standard of care. Under ordinary circumstances, I would be inclined to conclude that the isolated use of the word "judgment," in the context of the

entire charge, did not clearly amount to a misstating of the appropriate standard of care in accordance with the law as announced in *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127 [75 O.O.2d 184].

However, we are not here confronted with ordinary circumstances. The charge complained of was apparently adopted from one submitted by defense counsel. The authority cited to the trial court, in support of the proposed charge, had nothing at all to do with the specific medical malpractice charge sought by defendant. When it is considered that both actions of the trial court which are assigned as error were the product of defense counsel's urging, we are required to view the potential prejudice to plaintiffs' cause with close scrutiny. If trial counsel are prepared to press for tactical advantage at trial, they must be prepared to live with the consequences on appeal. Accordingly, when the cumulative effect of the trial court's rulings is considered, I am unable to say that plaintiffs were afforded a fair opportunity to present their cause to the jury. On that basis, then, the first assignment of error should be sustained.