**KURZNER, Appellant,**

v.

**SANDERS et al., Appellees.**

[Cite as *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920150.

Decided July 14, 1993.

*Vorys, Sater, Seymour & Pease, Alan T. Radnor* and *Carl D. Smallwood,* for appellant.

*Lindhorst & Dreidame* and *Michael F. Lyon,* for appellees.

MARIANNA BROWN BETTMAN, Judge.

On May 17, 1989, Dennis Kurzner, plaintiff-appellant, commenced this action for medical malpractice against Dr. Lester W. Sanders III and Lester W. Sanders III, M.D., Inc., defendants-appellees.[1] A number of other defendants were named in the suit but were later dismissed by plaintiff.

At the conclusion of the trial, the jury returned a verdict in favor of the defendant. Special interrogatories were submitted to the jury which supported the general verdict. Judgment was entered in favor of defendant and plaintiff appeals.

In this appeal, plaintiff asserts four assignments of error. For the reasons that follow, we reverse the judgment of the trial court and remand the case for a new trial.

This medical malpractice case arose out of the alleged failure by Dr. Sanders, a board-certified ophthalmologist, to diagnose and treat properly a fungal infection in the plaintiff's left eye. The plaintiff alleged that this incorrect diagnosis was compounded by Dr. Sanders's use of a topical steroid medication, which masked and in fact worsened the misdiagnosed underlying condition. Ultimately, as a result of this negligent care and treatment by Dr. Sanders, as alleged by Dennis Kurzner, Kurzner permanently lost the sight in his left eye.

Kurzner originally sought treatment from Dr. Sanders for mild irritation and watering in his left eye. Upon examining Kurzner's eye under a slit lamp, Dr. Sanders diagnosed a viral infection and stromal irritation and prescribed steroid medication. Kurzner's symptoms worsened over time. He returned several times to Dr. Sanders, who did no additional testing and changed neither his diagnosis nor his treatment, except to increase the dosage of the steroid medication. Finally, after nearly two weeks, with his eyesight beginning to blur and with increasing pain in the left eye, Kurzner saw a different ophthalmologist, who sent him immediately to University Hospital. There he was examined by Dr. James Sanitato, who took a culture and a corneal scraping, diagnosed a fungal infection, discontinued the steroid medication, and began treatment with an antifungal medication. Even with this treatment, Kurzner required several eye surgeries, which did not save the sight in his left eye. Plaintiff claimed that the delay in proper diagnosis and treatment caused his loss.

Dr. Sanders contended that the original diagnosis of herpetic disease and stromal inflammation was correct, that no testing other than slit-lamp evaluation

---

1. The doctor and the other named defendant, his professional corporation, will, in general, hereinafter be collectively referred to as "defendant," primarily because the corporation played no active part in the events giving rise to the plaintiff's claim.

was necessary, and that the proper medications were timely begun. Dr. Sanders testified that, as time went on, the patient's eye was improving, he was appropriately followed, but he went on to develop a new and different problem known as a Wessley ring, which was an indication of an immune response, and that increasing the use of steroid medication was appropriate for this condition. When Dr. Sanders saw Dennis Kurzner for the last time on June 4, he saw no evidence of the kind of lesions known as satellite lesions, which are highly suggestive of fungal infections. Dr. Sanders testified that a photograph of Kurzner's eye, taken by Dr. James Sanitato on June 6, when a fungal infection was confirmed after corneal scraping and culture, was entirely different clinically from anything Dr. Sanders had seen in any of his examinations of Kurzner.

Kurzner and his experts contended that the failure of Dr. Sanders to properly test, diagnose and treat a fungal infection in his eye was the proximate cause of his permanent loss of sight. Dr. Sanders and his expert contended that Kurzner's loss of sight was an unfortunate but known consequence of Kurzner's stormy course with the fungal infection, but that this only began after he was no longer being treated by Dr. Sanders.

The case was submitted to the jury, along with special interrogatories. The jury found Dr. Sanders not negligent and a general verdict was entered for the doctor and his professional corporation.

In his first assignment of error, plaintiff argues that the trial court erred in submitting the issue of clinical judgment to the jury. We agree.

The issue of clinical judgment was submitted to the jury in two ways. It formed a part of the court's general charge as follows:

"An error in judgment alone would not constitute negligence as long as [the doctor] exerted a reasonable standard of care and prudence as an ophthalmologist in a reasonable management of plaintiff Dennis Kurzner's condition. He is not liable for what is commonly called an honest error or mistake in judgment unless there is negligence or a departure from the standard of care."

Clinical judgment was also the subject of the first interrogatory submitted to the jury, which read, "Did you find by the preponderance of the evidence that defendant Lester W. Sanders III, M.D. was exercising clinical judgment relative to the use of steroids in the care and treatment of plaintiff, Dennis Kurzner?" The jury answered yes to this question. We hold that this interrogatory, along with the challenged portion of the jury instruction, had no place in this trial.

In presenting the issue for review, plaintiff argues that where the evidence fails to show that there is more than one appropriate standard of treatment for the condition he had, it is error to submit the issue of clinical judgment to the jury

and to allow the jury to find for the defendant on that basis alone. However, that is not the basis on which we find error in the jury instruction.

Additionally, contrary to plaintiff's position, we believe the court's charge on different methods, different schools of thought and bad result essentially followed Ohio Jury Instructions and was proper.

Before we get to a complete analysis of why we hold both the instruction given on mistake in judgment and the attendant interrogatory to be error, we will dispose of the discussion in plaintiff's brief about the "professional judgment" rule. To prove a malpractice case, it is by now axiomatic that the plaintiff must put on expert testimony to show that the doctor who the plaintiff believes committed malpractice fell below the standard of care of like practitioners under the same or similar circumstances. This test was set forth in the landmark case in Ohio of *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, and it is still the test today. The "professional judgment" rule is something entirely different. We agree with the defendant that it is wholly inapposite to our analysis of the instant case. The "professional judgment" rule arose in the context of a psychiatric malpractice case discussing predictability of future violent behavior. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449. The "professional judgment" rule does not displace the manner of proving malpractice as set forth in *Bruni, supra,* and is only to be applied in those rare situations where the standard of care cannot be determined. *Jenks v. West Carrollton* (1989), 58 Ohio App.3d 33, 567 N.E.2d 1338. In this case of alleged ophthalmologic malpractice, the standard of care can clearly be established, and the "professional judgment" rule simply does not apply.

We do not believe the trial court charged on the "professional judgment" rule at all. Rather we believe the court impermissibly discussed the issue of judgment in a different manner.

In his brief, the defendant makes the interesting remark that the concept of "clinical judgment" is one that Ohio law recognizes and allows to be charged on in medical malpractice cases. He cites no authority for this assertion, which we believe to be entirely erroneous. In both cases cited by the defendant in his discussion about clinical judgment, the courts specifically *disapproved* the use of the word "judgment" in a jury instruction. See *Chupka v. Rigsby* (1991), 75 Ohio App.3d 795, 600 N.E.2d 832; *Yeager v. Riverside Methodist Hosp.* (1985), 24 Ohio App.3d 54, 55, 24 OBR 107, 108, 493 N.E.2d 559, 561. *Yeager* in particular states that what is wrong with the word "judgment" in an instruction is that it interposes subjectivity into standards which are supposed to be objective. Indeed, the dissenting judge in *Yeager* noted, "[b]ecause the word 'judgment' connotes subjectivity, trial courts should entertain its use in charges of this

nature with great reluctance and skepticism." *Yeager, supra,* at 58, 24 OBR at 112, 493 N.E.2d at 564. In both cases, however, these courts found the instructions to be harmless and nonprejudicial because the totality of the charge, which must be examined fully to determine properly whether an error within the charge is prejudicial or harmless, did discuss the objective and appropriate standard of care.

■ We certainly agree that the law requires us to look at the totality of the jury charge in determining whether a portion of it is harmless or prejudicial. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001; *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus.

■ However, in doing so in this case we find the jury instruction on "honest error or mistake in judgment" to be prejudicially erroneous. As stated by the Supreme Court in *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 560 N.E.2d 165, "a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Id.* at 208, 560 N.E.2d at 171. This jury instruction was wrong because it changed the standard of care from an objective one to a subjective one. It is a direct violation of the clearly objective standard of care required by the syllabus of *Bruni v. Tatsumi.* There is nothing more material in a medical malpractice case than properly understanding the standard of care.

■ We next address the jury interrogatory of which plaintiff complains. The jury was given an interrogatory proposed by defendant asking whether Dr. Sanders was exercising his clinical judgment in the treatment of the plaintiff. The record does not show that the plaintiff objected to this interrogatory. However, a review of the entire record shows that the plaintiff repeatedly objected to the introduction of the subject of clinical judgment throughout the trial. The plaintiff objected to the jury instruction on this same subject. The plaintiff's position opposing introduction of the issue of clinical judgment was abundantly clear to the trial court. While we hold today that the instruction standing alone was prejudicially erroneous, and we do not excuse the plaintiff's failure to object to the interrogatory specifically, we wish to discuss the interrogatory further because it does, in our view, compound the error in the jury instruction. The charge complained of actually confused an objective and subjective standard of care in the same sentence. The first jury interrogatory compounds that part of the charge that was erroneous.

■ A doctor can indeed be exercising his best clinical judgment and still be negligent. The interrogatory improperly focused on the doctor's subjective judgment rather than on whether he objectively exercised due care.

■ Moreover, the interrogatory was erroneous for another reason. It does not address any proper determinative issue in the case and the court should have refused to give it. Jury interrogatories must address proper determinative issues in the case. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph three of the syllabus. Whether or not Dr. Sanders was exercising his clinical judgment is simply not a proper issue in this case. The interrogatory in no way tests the verdict; it compounds an erroneous instruction.

The highest courts of several states have now disapproved instructions using phrases like "mere error in judgment" and "honest error in judgment" because they change what should be an objective inquiry into a subjective one. See *Riggins v. Mauriello* (Del.1992), 603 A.2d 827; *Shumaker v. Johnson* (Ala.1990), 571 So.2d 991; *Rogers, infra; Watson v. Hockett* (1986), 107 Wash.2d 158, 727 P.2d 669; *Ouellette v. Subak* (Minn.1986), 391 N.W.2d 810; *Shamburger v. Behrens* (S.D.1986), 380 N.W.2d 659.

As we discussed above, use of the word "judgment" interposes into a medical malpractice case subjectivity which is not proper. Adding the word "clinical" to the word "judgment" not only does not cure the problem, but makes it worse, because it implies that there is something in the mystique of a doctor's craft which is a shield from liability so long as the doctor was indeed using that clinical judgment. In the words of the Supreme Court of Oregon, in an extremely cogent opinion rejecting the error-in-judgment instruction in malpractice cases, "medical malpractice cases are nothing more than negligence actions against medical professionals. The fundamental issue in these cases, as in all negligence cases, is whether the defendant breached the standard of care and caused injury to the plaintiff." *Rogers v. Meridian Park Hosp.* (1989), 307 Ore. 612, 619, 772 P.2d 929, 932. Using expressions like "error in judgment" (or as in the instant case, "honest error or mistake in judgment") "serves only to confuse a jury by implying that only an error in judgment made in bad faith can be actionable." *Rogers, supra,* at 618, 772 P.2d at 932.

We next turn to plaintiff's second assignment of error, which actually contains two claims. In the first part of the assignment of error, plaintiff argues that the trial court erred in failing to direct a verdict for him on the issue of proximate cause. We disagree.

■ A directed verdict may be granted to the plaintiff on the issue of proximate cause, but only if there is *no* evidence from which any inference can be drawn except that the negligent acts of the defendant were the proximate cause of the plaintiff's injury. *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97; *Kuhn v. Banker* (1938), 133 Ohio St. 304, 10 O.O. 373, 13 N.E.2d 242, paragraph two of the syllabus; *Smith v.*

*Midwest Health Serv., Inc.* (Mar. 3, 1993), Hamilton App. No. C–910754, unreported, 1993 WL 64260; *Bailey v. Emilio C. Chu, M.D., Inc.* (1992), 80 Ohio App.3d 627, 610 N.E.2d 531; *White v. Moody* (1985), 24 Ohio App.3d 176, 24 OBR 266, 493 N.E.2d 1006.

Plaintiff contends that there was no evidence presented at trial that the loss of sight in his left eye was due to a cause other than the treatment administered by Dr. Sanders. A review of the record does not support this contention. Causes for Kurzner's loss of vision, other than Dr. Sanders's treatment, were indeed discussed, in cross-examination of plaintiff's experts, by the defendant's expert, Dr. Sanitato, and by Dr. Sanders himself. A defendant is not obligated to put on testimony about the cause of an injury or provide an alternative theory about causation. The burden of proof on this issue remains with the plaintiff.

As the court stated in its charge, the plaintiff must prove the nature and extent of the injuries and that the defendant caused them. Even if defendant chooses to put on no testimony giving an alternative explanation on causation, so long as the evidence is disputed on this point, the issue is properly submitted to the jury. As the court properly made quite clear in its jury instructions, just because a person is an expert does not mean his or her opinion need be believed.

So long as the evidence on causation is disputed, which it clearly was in this case, defendant need not provide an alternative explanation to defeat a directed verdict. In this case, there is evidence from which the inference could be drawn that the loss of Kurzner's eyesight was due to factors other than the doctor's alleged negligence and the trial court properly refused to direct a verdict on causation. See *Ramage, supra; Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467.

The second prong of plaintiff's second assignment of error challenges the court's instruction on multiple causes. Here we again find plaintiff's contention to have merit. The challenged charge is as follows: "If you find that Dennis Kurzner's loss of eyesight might have resulted from one of several causes, it is the plaintiff's burden to produce evidence that excludes the effectiveness of those causes for which Dr. Sanders is not legally responsible. If plaintiff fails to produce such evidence, you must find for Dr. Sanders."

Before analyzing why this is prejudicial error, we note that elsewhere in its charge the court did give the proper instruction on proximate cause and, as before, we must look to the totality of the instruction. However, this charge, which paraphrases the second paragraph of the syllabus of *Gedra v. Dallmer* (1950), 153 Ohio St. 258, 41 O.O. 274, 91 N.E.2d 256, is wholly erroneous in this

case. It is prejudicial because, as noted by the Ohio Supreme Court in *Westing-house Elec. Corp. v. Dolly Madison Corp.* (1975), 42 Ohio St.2d 122, 71 O.O.2d 85, 326 N.E.2d 651, a case where the defendant relied on *Gedra* to try and force the plaintiff to disprove all causes of a fire other than careless smoking in order to prevail on causation, to impose on a plaintiff "the burden of always effectively eliminating all other possible causes in order to make his case, * * * would impose a burden of proof analogous to the burden in criminal cases of proof beyond a reasonable doubt." *Id.* at 127, 71 O.O.2d at 88, 326 N.E.2d at 656. While the court in *Westinghouse* did not overrule *Gedra*, it held that *only* where the evidence is such that *no* inference of negligence can be drawn from the facts presented does the plaintiff have to disprove all but his or her own theory in order to prevail.

That is clearly not the case in the instant matter. Where the plaintiff has established facts from which an inference of negligence can properly be drawn, the plaintiff does not have to disprove all other possible causes to prevail. In this case there was sufficient evidence from which the jury could find the defendant was negligent. This jury instruction was error because it placed an improper burden of proof on the plaintiff and requires a reversal of this case. Further, assuming this instruction must be read in conjunction with the third interrogatory given to the jury ("Did defendant, Lester W. Sanders III, M.D.'s negligence directly and proximately cause plaintiff, Dennis Kurzner, to lose sight in his left eye?"), the jury could not properly answer this interrogatory because of the erroneous burden of proof imposed on the plaintiff by the instruction.

In his third assignment of error, plaintiff argues that the trial court erred in excluding the expert opinion of Dr. Srinivasan, one of his two expert witnesses. The opinion which the trial court disallowed was the answer to a lengthy hypothetical question posed by the plaintiff. We hold that the trial court did not abuse its discretion in holding this opinion to be repetitious. See Evid.R. 403(B). Dr. Srinivasan had elsewhere already given his opinion that particular acts of Dr. Sanders fell below the standard of care and that this negligence was, in his opinion, the proximate cause of the plaintiff's permanent injuries. Further-more, the jury heard the doctor repeat his criticisms several more times in responding to cross-examination.

In his final assignment of error, plaintiff argues that the verdict was against the manifest weight of the evidence. Because of our rulings on the first and second assignments of error, which warrant a remand for a new trial, we need not reach this issue. App.R. 12(A)(1)(c).

Accordingly, the judgment of the trial court is reversed and the matter is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and HILDEBRANDT, J., concur.