DECISION
Plaintiff-appellant, Ana A. Villarroel, administrator of the estate of her deceased mother, Ana Marie Villarroel, appeals the judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Dr. John Kelley Brennan and his practice group, Canyon Medical Center, Inc. By its judgment, rendered upon the verdict of a jury, the trial court dismissed with prejudice medical malpractice wrongful death claims against appellees.
The following evidence was presented at trial. In 1987, appellant's mother suffered a severe stroke that eventually left her unable to speak, walk or control her bodily functions. Appellant lived with and cared for her mother. Appellant made all medical decisions for her mother.
From 1987 until her death on December 25, 1995, at the age of ninety-three, appellant's mother was chronically ill. She had been to the hospital more than seventy times and had received treatment from many doctors. Because the muscles that controlled her swallowing did not function properly, she had ongoing problems with aspiration, resulting in periodic and cyclical episodes of excess fluids in her lungs, lung infections and dehydration. Two of her treating physicians testified that appellant's mother endured an ongoing fluid management cycle that would never resolve.
Dr. Brennan first saw appellant's mother on November 20, 1995. Dr. Brennan thought she was in danger of dying, and he had her admitted to Mount Carmel East Hospital. After obtaining a medical history and ordering several tests, Dr. Brennan diagnosed her with acute respiratory distress probably secondary to acute bronchitis and congestive heart failure. He discontinued one of the antibiotics she had been taking for respiratory infection and increased her dosage of Lasix, a diuretic, from 20 milligrams to 80 milligrams per day in an effort to decrease fluids.
By November 22, 1995, appellant's mother had improved to the point that she was discharged from the hospital with orders for return visits, follow-up testing and medications. That day, appellant informed Dr. Brennan that she wanted him to do everything to prolong her mother's life. Appellant indicated that she wanted her mother placed on "full code" status, so that in the event of cardiac or respiratory arrest her mother would receive all emergency resuscitation efforts. Dr. Brennan followed appellant's request and put a note in her mother's medical records that she was on full code status. By a telephone call to Dr. Brennan later that day, appellant expressed concern about Dr. Brennan's order to discontinue one of her mother's antibiotics, but appellant was reassured that Dr. Brennan intended to discontinue that medication.
Appellant took her mother to the emergency room on November 25, 1995, because she had developed increased congestion and was producing discolored phlegm. The emergency room physician prescribed antibiotics.
Appellant telephoned Dr. Brennan at his home on the night of November 29, 1995. During that conversation, Dr. Brennan told appellant that he believed that her mother's condition was worsening and he expressed his opinion that her mother's care status should be changed from full code to comfort care. Dr. Brennan stated that, in his opinion, aggressive resuscitation would be inappropriate and would do harm without providing benefit. Appellant vehemently disagreed and reiterated that, if necessary, she wanted her mother to receive aggressive resuscitation efforts. Appellant testified that Dr. Brennan also stated that appellant should allow her mother to die without treating future infections with antibiotics. Dr. Brennan testified that, although he explained to appellant that her mother would likely die of an infection, he did not recall telling appellant that she should not treat future infections with antibiotics. In this conversation, appellant told Dr. Brennan that she wanted to obtain another physician who would agree with her philosophy. Dr. Brennan agreed to continue caring for her mother until a new physician could be obtained.
On December 1, 1995, appellant's mother went to the emergency room and was readmitted into the hospital by Dr. Brennan for recurrent pneumonia/bronchitis and dehydration. Several doctors examined her over the next three days. On December 4, 1995, appellant discharged Dr. Brennan and her mother's care was transferred to Dr. John Larrimer, who had treated her in the past and was familiar with her medical history.
Among other things, Dr. Larrimer continued appellant's mother on 80 milligrams per day of Lasix. He testified that, approximately one week later, her condition had improved to the point where he had hoped to discharge her. In mid-December, however, she started to show signs of failure. She died on December 25, 1995.
Dr. Brennan's defense expert, Dr. Greg Warshaw, testified that appellant's mother received excellent care from Dr. Brennan and from the other physicians who treated her in December 1995. Other treating physicians likewise testified that Dr. Brennan's care of appellant's mother met the standard of care. Testifying as an expert on behalf of appellant, Dr. Jeffrey Wirebaugh testified that Dr. Brennan's conduct fell below the standard of care because he failed to decrease the patient's dosage of Lasix from 80 milligrams per day when she was discharged from the hospital on November 22, 1995. He testified that the increase in appellant's mother's Lasix dose from 20 milligrams to 80 milligrams per day, over such a prolonged period of time, caused her to suffer extreme dehydration and contributed to her death. Dr. Wirebaugh admitted that, during the period of time at issue, appellant's mother did not suffer any pain.
At the beginning of trial, appellant had alleged two causes of action: (1) a medical malpractice survivorship action to recover damages on behalf of her mother; and (2) a medical malpractice wrongful death cause of action to recover damages for loss of consortium and funeral expenses. Appellant also sought punitive damages.
At the close of evidence, the court granted appellees' motion for a directed verdict as to punitive damages. In its charge to the jury, the court instructed that, if they found for appellant on the issue of liability, they should determine damages to compensate the beneficiaries for loss resulting from wrongful death. The court did not instruct about survivorship damages. In a colloquy with counsel after the charge, the court stated that: (1) the case was not tried as one would try a medical malpractice survivorship claim; (2) appellant had not submitted any substantive instructions pertaining to a survivorship claim; and (3) appellant's counsel had twice informed the court that appellant was not pursuing survivorship damages. Although appellant's trial counsel denied recalling the specifics of the unrecorded discussions to which the court alluded, he admitted that his answers to questions about the survivorship claim were "a little confused" because he knew that "money damages and loss of income" on the part of appellant's mother were not part of the case.
The jury returned a general verdict in favor of appellees. Appellant now assigns the following errors:
 I. THE TRIAL COURT ERRED BY OMITTING TO INSTRUCT THE JURY PROPERLY ON CAUSATION AND SEPARATE CLAIMS ISSUES.
 II. THE TRIAL COURT ERRED BY OMITTING TO INSTRUCT THE JURY PROPERLY ON PUNITIVE DAMAGES AND IN GRANTING A DIRECTED VERDICT IN FAVOR OF DEFENDANT ON PUNITIVE DAMAGES.
 III. THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
For the reasons that follow, we affirm the judgment of the trial court.
By her first assignment of error, appellant contends that the trial court erroneously failed to give the following four proposed jury instructions:
PROPOSED INSTRUCTION NO. 2
 1 O.J.I. 23.55 Separate claims out of same wrongful act.
 A party may join as many claims as she has against the opposing party. [WRONGFUL DEATH.] In this case the administrator had brought two actions: one for the wrongful death of her mother [decedent] [and funeral expenses], and another action for [medical malpractice].
 You will consider these different claims for damages separately, according to the instruction of the court, and if your verdict is for plaintiff, you will report a separate amount for each claim in your verdict.
PROPOSED INSTRUCTION NO. 8
1 O.J.I. 7.80 Concurrent but independent negligence
 If a person is injured by the negligence of two persons who act independently, and their acts combine to proximately cause injury, each of the wrongdoers is liable to such person for the full amount of the damage. The injured person may enforce her claim in an action against all jointly or any one of them individually.
PROPOSED INSTRUCTION NO. 9
Right to Indemnity When Physicians are Joint Tortfeasors
 Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single, indivisible injury. Garbe v. Halloran (1948), 150 Ohio St. 476 (syllabus one). [Any physician] who negligently causes an injury has a right to indemnity from a physician who negligently causes a new injury or aggravates the existing injury during the course of his/her [subsequent] treatment of the injury caused by the [first physician]. Traveler's Indemnity Co. v. Trowbridge (1975), 41 Ohio St.2d 11, 321 N.E.2d 787.
PROPOSED INSTRUCTION NO. 10
1 O.J.I. 11.30 Intervening and Superseding Cause
 5. CONCLUSION ON FORSEEABILITY. If the party who committed the first act of negligence foresaw, or by the use of ordinary care should have foreseen, the probability of negligent conduct of another and the probability that his own conduct and the conduct of the other would likely result in injury to a third person, then the conduct of both parties combined and the conduct of both is a proximate cause of the injury. However, if the conduct of the second party was not foreseeable, and if the immediate cause of the injury was the conduct of the second party, then the conduct of the first was not a proximate cause.
We conclude that the trial court did not err when it declined to give these instructions.
A trial court is required to give jury instructions that are, when taken as a whole, sufficiently clear to allow a jury to apply the law to the facts and inform the jury adequately of the law. See Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210. The instruction to the jury should state clearly and concisely the issues of fact and principles of law governing the case. Pickering v. Cirell (1955), 163 Ohio St. 1, 4.The language of jury instructions, however, is within the trial court's discretion. "A trial court is not required to give a proposed jury instruction in the precise language requested by its proponent, even if the proposed instruction states an applicable rule of law. Instead, the court has the discretion to use its own language to communicate the same legal principles." Henderson v. Spring Run Allotment (1994),99 Ohio App.3d 633, 638. An appellate court considers whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error of law; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Id. Moreover, upon review, we must consider the charge to the jury in its totality, and if the law is clear and fairly expressed, there is no abuse of discretion. See Yeager v. Riverside Methodist Hosp. (1985),24 Ohio App.3d 54, 55.
Appellant's proposed instructions eight, nine and ten all pertain to issues involving negligence on behalf of multiple tortfeasors. Although this lawsuit only involved allegations of negligence against Dr. Brennan, appellant contends that the trial court should have given proposed instructions eight, nine and ten because appellant's expert suggested that other physicians who treated appellant's mother may have also been negligent. We conclude that the trial court's charge to the jury provided adequate instruction regarding the law of negligence in the event of multiple tortfeasors. Specifically, the trial court instructed as follows:
 Cause occurs when the injury is the natural and foreseeable result of the act or failure to act.
 There may be more than one proximate cause. When the negligent act or failure to act of one party joins the negligence of another to produce the injury, the negligence of each is a cause.
 It is not necessary that the negligence of each occur at the same time, nor that there be a common purpose or action.
We conclude that the trial court's language adequately communicated the legal principles raised by the facts of this case with regard to the possibility of multiple tortfeasors.
We likewise conclude that the trial court did not abuse its discretion when it declined to give appellant's second proposed instruction. Appellant argues that, because the court failed to give this instruction which contained introductory language designed to alert the jury that appellant's lawsuit involved causes of action for wrongful death and medical malpractice, the jury was not allowed to return a verdict in appellant's favor on a medical malpractice survivorship claim. Appellant's argument, however, fails for several reasons. First, appellant did not request damages related to a medical malpractice survivorship claim. Second, there was no evidence presented at trial in support of damages based on a survivorship claim; appellant offered no evidence that her mother suffered economic damages or pain and suffering. Third, even if the trial court had erred by failing to give the requested instruction, any resulting error would have been harmless. The trial court fully instructed the jury on all the substantive elements of medical malpractice, including negligence and proximate cause, because those elements also related to appellant's claim for wrongful death, and the jury returned general verdicts for appellees, rejecting appellant's claim for medical malpractice.
Accordingly, we overrule appellant's first assignment of error.
In her second assignment of error, appellant argues that the trial court erred when it granted a directed verdict in favor of appellees on the issue of punitive damages. We disagree.
"Punitive damages are intended to deter conduct resulting from a mental state that is `so callous in its disregard for the rights and safety of others that society deems it intolerable.'" Ward v. Hengle (1997),124 Ohio App.3d 396, 405, quoting Calmes v. Goodyear Tire Co. (1991),61 Ohio St.3d 470, 473. A party seeking punitive damages has the burden of proving by clear and convincing evidence that she is entitled to them. Cabe v. Lunich (1994), 70 Ohio St.3d 598, 601.
Punitive damages may be awarded in civil tort actions where the plaintiff proves actual damages and the defendant's actions demonstrate malice, fraud or insult. Preston v. Murty (1987), 32 Ohio St.3d 334. Something more than mere negligence is always required. Id. at 335. In this case, there is no allegation of fraud or insult. Therefore, a punitive damages award must necessarily rest on the presence of malice.
The malice necessary for an award of punitive damages is either "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Id. at syllabus. Malice can be inferred from conduct and surrounding circumstances. Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 37. Before submitting the issue of punitive damages to the jury, the trial court must review the evidence to determine if reasonable minds can differ as to whether actual malice existed. Preston.
We conclude that the trial court did not err when it granted appellees' motion for directed verdict as to the punitive damages claim. In this case, there was no evidence that appellees' actions were motivated by hatred, ill will, revenge or a conscious disregard for appellant's mother's safety. Although appellant argues that Dr. Brennan failed to prescribe antibiotics as part of an overall plan to shorten appellant's mother's life, the evidence simply does not support this theory. The evidence demonstrated that appellant's mother responded favorably to Dr. Brennan's care and that Dr. Brennan took actions that improved her condition. Although Dr. Brennan disagreed with appellant's decision to place her mother on full code status, there is no evidence that his opinion was motivated by animus or that he failed to comply with appellant's wishes. Moreover, we note that, even if the trial court had erred in directing a verdict for appellees as to punitive damages, any resulting error would have been harmless because, in rendering general verdicts in favor of appellees, the jury concluded that appellant had not sustained actual damages, a prerequisite for any award of punitive damages. Accordingly, appellant would not be entitled to an award of punitive damages. We therefore overrule appellant's second assignment of error.
By her third assignment of error, appellant contends that the jury verdict is against the manifest weight of the evidence. We disagree.
In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that the verdict must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380,387. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the weight to be given the evidence and the credibility of witnesses are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trier of fact is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
Appellant has not established that the trier of fact clearly lost its way. The trial testimony of Dr. Brennan's medical expert, Dr. Warshaw, and appellant's mother's treating physicians amply supports the jury's finding that Dr. Brennan was not negligent. Appellant's third assignment of error is overruled.
For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and BROWN, JJ., concur.