DAVIS, Appellant,

v.

LIEBSON, Appellee.

[Cite as *Davis v. Liebson,* 154 Ohio App.3d 333, 2003-Ohio-4965.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020366.

Decided Sept. 19, 2003.

334

Arthur W. Harmon Jr., for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., Paul W. McCartney and Megan K. Roach, for appellee.

DOAN, Judge.

{¶ 1} On March 15, 2000, plaintiff-appellant Phyllis M. Davis consulted defendant-appellee Dr. Samuel Liebson, a licensed podiatrist, about problems that she was having with her feet. Liebson diagnosed Davis with "hammertoes" and recommended surgery to correct the condition. Davis agreed to the surgery. As part of the preoperative workup, a nurse drew some of Davis's blood. Liebson sent Davis's blood to a laboratory for various tests, including a test for HIV.

{¶ 2} Prior to the date scheduled for the surgery, Davis's employer, ophthalmologist Dr. Howard Melvin, told her that surgery was not necessary to treat her condition. Davis sought a second opinion from podiatrist Dr. Algner Broach. Broach examined Davis and determined that she did not suffer from "hammertoes." Broach told Davis that she had corns and calluses on her feet for which surgery was unnecessary. Davis called Liebson and cancelled the surgery.

{¶ 3} Subsequently, Davis received a bill from the laboratory that performed the preoperative blood tests ordered by Liebson. Davis stated that she discovered at that time that the HIV test had been performed. Davis went to Liebson's office to retrieve her medical records to determine why an HIV test had been performed on her blood without her knowledge or consent. While examining her medical records, Davis noticed that a test for syphilis had also been done. Davis's test results were negative for both HIV and syphilis.

{¶ 4} Davis filed a complaint alleging that Liebson had failed to obtain her consent to perform HIV and syphilis tests on her blood. Davis sought to recover damages for a violation of R.C. 3701.242 and for negligent and intentional infliction of emotional distress. Davis also requested punitive damages. Liebson filed a motion for summary judgment, which the trial court granted. Davis has appealed, raising one assignment of error for our review.

{¶ 5} Davis's assignment of error alleges that the trial court erred in granting Liebson's motion for summary judgment. The arguments in Davis's brief are limited to whether there was a genuine issue of material fact regarding Liebson's

alleged violation of R.C. 3701.242 and whether Davis could recover punitive damages for such a violation.

{¶ 6} Summary judgment was appropriate if there were no genuine issues of material fact, Liebson was entitled to judgment as a matter of law, and after construing the evidence most strongly in Davis's favor, reasonable minds could only have reached a conclusion adverse to her. See Civ.R. 56(C).

{¶ 7} For the purposes of this appeal, we accept Davis's statement that the HIV test was performed without her knowledge and consent. R.C. 3701.242(A) provides that "[a]n HIV test shall be performed only if, prior to the test, informed consent is obtained either by the person or agency of state or local government ordering the test or by the person or agency performing the test."

{¶ 8} R.C. 3701.242(E)(5) states that the informed-consent provisions of R.C. 3701.242(A) do not apply to the performance of an HIV test "[w]hen the test is performed by or on the order of a physician who, in the exercise of his professional judgment, determines the test to be necessary for providing diagnosis and treatment to the individual to be tested, if the individual or his parent or guardian has given consent to the physician for medical treatment."

{¶ 9} In support of his motion for summary judgment, Liebson submitted his own affidavit, in which he stated that he had ordered the tests for HIV and syphilis as part of "the standard pre-operative workup." Liebson stated, "In the exercise of my professional judgment, I determined that the HIV and syphilis tests were necessary in order to properly treat Ms. Davis." Relying on his affidavit, Liebson successfully argued to the trial court that he did not violate R.C. 3701.242(A) because Davis had consented to medical treatment, and because he had determined in the exercise of his professional judgment that the HIV test was necessary for that medical treatment.

{¶ 10} In opposition to Liebson's motion for summary judgment, Davis submitted the affidavit of Dr. Algner Broach, the podiatric surgeon who ultimately treated her feet. Broach's affidavit stated that Davis was not suffering from "hammertoes" but from corns and calluses on her feet, a condition for which surgery was not necessary. Broach also stated that an HIV test was not necessary in order to diagnose or treat "hammertoes." Broach stated that, in his opinion, the HIV test was performed for the benefit of Liebson, and not for any diagnosis or treatment of Davis's feet.

{¶ 11} Davis also submitted the affidavit of Dr. Howard Melvin, the eye surgeon for whom she worked. Melvin stated that although he was not a podiatrist, he had examined Davis's feet and did not think that surgery was in order. Melvin stated that he had told Davis to seek another podiatrist's opinion before going through with the surgery. Melvin also stated that it was highly unusual for a preoperative workup to include an HIV test. Melvin stated that

"while a surgeon might legitimately have concerns regarding the transmission of the HIV virus to either himself or to those assisting in an operation, whether or not the patient has HIV has no impact on either the diagnosis or treatment of 'hammertoes.' "

{¶ 12} Davis argues that "professional judgment" as set forth in R.C. 3701.242(E)(5) is tantamount to "medical opinion," and that therefore an objective standard such as the medical-malpractice standard set forth in *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, should be applied to determine whether Liebson was entitled to the protection of the "professional judgment" exception.

{¶ 13} Liebson argues that the opinions of Dr. Melvin and Dr. Broach were irrelevant because the standard for the "professional judgment" exception is a subjective one based solely on his own judgment. Liebson argues that the statement in his affidavit that, in his professional judgment, the HIV test was necessary to the diagnosis and treatment of Davis ended the inquiry.

{¶ 14} The word "judgment" interposes subjectivity into objective standards. See *Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 627 N.E.2d 564. The standard for "professional judgment" as used in R.C. 3701.242(E)(5) must strike a balance between the objective standard applied in a medical malpractice case and a completely subjective standard by which a doctor could never be held liable for a violation of R.C. 3701.242(A) as long as he testified in his own behalf that he exercised his "professional judgment" in determining that an HIV test was necessary for treatment and diagnosis.

{¶ 15} In *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 529 N.E.2d 449, the Ohio Supreme Court adopted the "professional judgment rule" in order to deal with the highly subjective and individualized nature of psychiatric diagnosis and treatment. The *Littleton* court held that, under the professional judgment rule, liability can be imposed only where a doctor has not acted in good faith or has failed to exercise professional judgment. The court explained that the professional judgment rule requires a doctor to make a good-faith judgment based upon a thorough examination of all relevant factors, and that "professional standards" are to be used to determine which factors are relevant and whether an evaluation is thorough. The professional judgment rule is similar to the business judgment rule, where the courts defer to disinterested corporate directors in the absence of bad faith or self-interest. See id.; *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 673 N.E.2d 1311. The professional judgment rule imposes a less stringent duty of care than the traditional medical-malpractice standard. See id.; *Jenks v. W. Carrollton* (1989), 58 Ohio App.3d 33, 567 N.E.2d 1338.

{¶ 16} We hold that the professional judgment rule as set forth by the Ohio Supreme Court in *Littleton* must be applied to determine whether a physician is

entitled to the professional judgment exception contained in R.C. 3701.242(E)(5), because the rule strikes the necessary balance between the objective medical-malpractice standard and a completely subjective standard. Our holding is buttressed by the reference to good faith contained in R.C. 3701.244(D), which states that a person who acts in good faith in accordance with R.C. 3701.242 is not liable for damages in a civil action.

{¶ 17} Liebson stated in his affidavit that, in his professional judgment, an HIV test was necessary for the diagnosis and treatment of Davis's feet. Melvin and Broach testified that an HIV test was unnecessary for the diagnosis and treatment of "hammertoes," and that the HIV test was not part of a standard preoperative workup. Broach also stated that, in his opinion, the HIV test was ordered for Liebson's benefit and not for any diagnosis or treatment of Davis's feet.

{¶ 18} We hold that the doctors' conflicting affidavits raised a genuine issue of material fact as to whether, in determining that an HIV test was necessary to treat Davis's feet, Liebson had rendered a good-faith judgment based upon a thorough evaluation of all the relevant factors according to professional standards. Therefore, the trial court erred in entering summary judgment on Davis's claim for a violation of R.C. 3701.242.

{¶ 19} Davis also argues that the trial court erred in granting Liebson's motion for summary judgment on her claim for punitive damages.

{¶ 20} R.C. 3701.244(B) provides that the trial court may award compensatory damages and equitable relief, including injunctive relief, for a violation of R.C. 3701.242(A). R.C. 3701.244(B) also states that if an award of damages is made in favor of a plaintiff, the court may award reasonable attorney fees. R.C. 3701.244(F) provides that the "remedies in this section are the exclusive civil remedies for an individual injured by noncompliance with section 3701.242." Because R.C. 3701.244(F) limits awardable damages to those listed in the statute, Davis could not recover punitive damages.

{¶ 21} Davis's assignment of error is sustained in part and overruled in part. The trial court's entry of summary judgment on Davis's claim for punitive damages is affirmed, but the summary judgment entered on her claim for a violation of R.C 3701.242 is reversed, and this cause is remanded for further proceedings consistent with law and this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

GORMAN, J., concurs.

SUNDERMANN, P.J., dissents.

SUNDERMANN, Presiding Judge, dissenting.

{¶ 22} This is a case where the trial court had to apply a statute. The statute in question was R.C. 3701.242(E), which says: "(5) When the test is performed by or on the order of a physician who, in the exercise of his professional judgment, determines the test to be necessary for providing diagnosis and treatment to the individual to be tested, if the individual or his parent or guardian has given consent to the physician for medical treatment."

{¶ 23} There is no dispute that Davis went to Dr. Liebson for treatment. As the treating physician, he provided an affidavit stating that in his professional judgment an HIV test was necessary for diagnosis and treatment. I fail to see which part of the statute was not completely followed.

{¶ 24} Davis argues that Dr. Liebson did not explain the basis of his medical opinion and contends that "surely the law requires more." But the statute does not require more. The only way to make it so is for this court to rewrite the statute by inserting after the words "professional judgment" the phrase "and show how his medical opinion is necessary for the diagnosis and treatment of the disease in question." The law might be better if that had been done, but our job is to apply statutes as written and not to rewrite them the way we think they should be. I respectfully dissent.