[Cite as *Cummins v. Broderick*, 2012-Ohio-1508.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

SUE CUMMINS, Executor of the Estate of Terry Cummins, Deceased, :     APPEAL NO. C-110399
    TRIAL NO. A-1000416

    Plaintiff-Appellant, :     *O P I N I O N.*

    vs. :

THOMAS M. BRODERICK, M.D., :

    and :

OHIO HEART AND VASCULAR CENTER, INC., :

    Defendants-Appellees. :

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 4, 2012

*Elk & Elk Co., Ltd.*, *James M. Kelly, III*, *Kimberly C. Young*, *The Lyon Firm* and *Joseph M. Lyon*, for Plaintiff-Appellant,

*Calderhead, Lockemeyer & Peschke Law Office, David C. Calderhead* and *Joel L. Peschke,* for Defendants-Appellees.

Please note: This case has been removed from the accelerated calendar.

**SUNDERMANN, Judge.**

{¶1}    Sue Cummins appeals the trial court's judgment entered against her on her medical-malpractice claim against Thomas Broderick, M.D., and Ohio Heart and Vascular Center, Inc.  We conclude that Cummins's sole assignment of error does not have merit, so we affirm the judgment of the trial court.

{¶2}    In January 2005, an electrocardiogram indicated that Cummins's husband Terry had blockage in his right coronary artery.  Terry was admitted to The Christ Hospital, where Broderick performed an angiogram and cardiac catheterization to treat the blockage.  After treating a blockage in the right coronary artery with a stent, Broderick performed an angiogram of the left anterior descending artery ("LAD").  Broderick determined that there were blockages ranging from a 40 percent obstruction in the proximal portion of the LAD to a 90 percent obstruction in the apex of the LAD.  Broderick sought to insert a stent to relieve a blockage of a 60 percent obstruction in the mid portion of the LAD.  It was later determined that Broderick did not treat the targeted blockage that he had noted in Terry's chart.  Rather, he put a stent in a blockage that was above the 60 percent obstruction.  Terry's chart indicated that the procedure had been done with no complications, and he was released from the hospital the next day.

{¶3}    Two days later, Terry began to experience chest pain.  He was taken by ambulance to the Clermont County Hospital, where he later died.  The cause of death was determined to have been acute myocardial infarction that had been caused by stent thrombosis.

{¶4}    Cummins filed a medical-malpractice lawsuit against Broderick and Ohio Heart and Vascular Center, Inc., in which she alleged that Broderick had failed

to meet the standard of care when he made the decision to treat a blockage in the LAD and when, after having decided to intervene in the LAD, he did not treat the blockage that he had targeted. The case was tried before a jury.

{¶5}   During the trial, Cummins presented the expert testimony of Jeffery Breall, M.D., who opined that Broderick's decision to intervene in the LAD and subsequent action in placing the stent in the LAD was beneath the requisite standard of care. Broderick countered with his own testimony and that of his expert, Barry George, M.D., that Broderick's actions were within the standard of care. At the conclusion of the trial, the jury found in favor of Broderick and Ohio Heart and Vascular Center.

{¶6}   In her sole assignment of error, Cummins asserts that the trial court erred by failing to cure misleading statements regarding the standard of care in a medical-malpractice action. Cummins contends that Broderick's counsel repeatedly and improperly suggested to the jury that a doctor using reasonable judgment could not be found negligent of medical malpractice. Cummins further contends that the trial court erred when it refused to give a requested jury instruction that would have clarified that the standard of care was an objective standard.

{¶7}   "To prove a malpractice case, it is by now axiomatic that a plaintiff must put on expert testimony to show that the doctor who the plaintiff believes committed malpractice fell below the standard of care of like practitioners under the same or similar circumstances." *Kurzner v. Sanders*, 89 Ohio App.3d 674, 679, 627 N.E.2d 634 (1st Dist.1993). *See also Bruni v. Tatsumi*, 46 Ohio St.2d 127, 364 N.E.2d 673 (1976). The standard, as acknowledged by both parties in this case, is an objective one.

**{¶8}** Cummins first contends that Broderick improperly referenced "reasonable judgment" or "clinical judgment" throughout the trial. According to Cummins, such references created confusion and misled the jury. She likens this case to *Thamann v. Bartish*, in which we concluded that defense counsel's improper and inflammatory remarks were so pervasive that there was a substantial likelihood that the jury had been misled. 167 Ohio App.3d 620, 2006-Ohio-3346, 629, 856 N.E.2d 301 (1st Dist.). We note that only once during closing arguments did Cummins object to defense counsel's discussion of "judgment." And on several occasions, Cummins's counsel brought up the issue of whether Broderick had used bad judgment. We conclude that in this case the statements about judgment were not so pervasive as to mislead the jury.

**{¶9}** Cummins also contends that the trial court erred when it did not give the jury a requested instruction that clarified the objective standard to be applied in medical-malpractice cases. Cummins requested that the trial court add the following to the jury instructions: "A physician can be exercising his best clinical judgment and still be negligent. The standard of care is an objective standard not a subjective standard." The trial court refused to give the additional instruction, concluding that the requested instruction was unnecessary and would confuse the jury.

**{¶10}** The trial court correctly charged the jury on the proper standard of care as set forth in *Bruni v. Tatsumi*. It was within the court's discretion whether to give instructions that were redundant or immaterial. *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), paragraph two of the syllabus. In this case, given that the trial court properly instructed the jury on the standard of care, the instruction requested by Cummins was redundant. We conclude that the trial court did not

abuse its discretion when it concluded that the additional instruction would confuse the jury.

{¶11} Nor was the additional instruction necessary after the statements made by Broderick's counsel in closing arguments. Cummins's counsel objected and requested that defense counsel's comment about judgment be struck. The trial court first indicated that it would strike the statement. But after further side-bar discussion during which Broderick's counsel stated that he would not mention judgment again, the trial court told counsel, "All I'm going to do is, I'm going to instruct the jury they will have to refer to the instructions [as to standard of care.]" Counsel for both parties replied, "That's fine." The court then stated to the jury,

Ladies and gentlemen, as I said earlier, this is closing arguments, and that's what it is. It's closing arguments from both sides. It is not evidence. I will just caution you, you listen to the arguments and evaluate them, but when it comes to the instructions of law as given by the Court as to such things as standard of care and whatnot, those instructions, the jury instructions are what's controlling, all right.

We conclude that the trial court's statements and the jury instructions were sufficient to properly instruct the jury on the standard of care. The trial court did not abuse its discretion when it refused to strike the defense counsel's statements. The sole assignment of error is without merit, and we therefore affirm the judgment of the trial court.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry this date.